The Employment Law Firm
Cynthia L. Pollick, LLM                          Attorney for Plaintiffs
I.D. No.: 83826
363 Laurel Street
Pittston, PA 18640
(570) 654-9675
_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL SOURYAVONG, et al.          :
                                    :
        Plaintiffs                  :       JURY TRIAL DEMANDED
                                    :
        v.                          :
                                    :
LACKAWANNA COUNTY, et al.           :       DOCKET NO:  13-1534
                                    :
                                    :
        Defendants                  :

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR ATTORNEY FEES

## POINT ONE
## Offers of Judgment are not recognized in FLSA cases

The only way to resolve a FLSA claim is by district court involvement

and approval. "The Eleventh Circuit has held that FLSA claims may **only** be

abridged or settled after a court reviews the proposed settlement to ensure

that it is fair and reasonable." *Luna v. Del Monte Fresh Produce*, 2008 WL

754452 (N.D. Ga. 2008)(emphasis added). "There are only two ways in which

back wage claims arising under the FLSA can be settled or compromised by

employees. First, under section 216(c), the Secretary of Labor is authorized to

1

supervise payment to employees of unpaid wages owed to them. ... The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(c) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn Foods v. United States of America*, 679 F.2d 1350 (11th Cir. 1982).

In *Luna*, the district court struck Rule 68 offers of judgment finding them inappropriate. In that case, the district court held, "[d]efendants' settlement offers have not been, and at this stage of the litigation cannot be, reviewed or approved by the Court. The offers are thus invalid under *Lynn's Food*. Accordingly, the Court GRANTS plaintiffs' motion to strike defendants' Rule 68 offers ...." *Luna v. Del Monte Fresh Produce*, 2008 WL 754452 (N.D. Ga. 2008); *See also*, *Walker v. Vital Recovery Servs., Inc.*, 300 F.R.D. 599 (N.D. Ga. 2014)(striking Rule 68 Offers of Judgment). Just as in *Luna* and *Walker*, Defendant provided no raw data or even their calculations when the Rule of Offers were made nor did they seek Court approval.

In *Cheeks*, the 2nd Circuit, in a case of first impression, held that "…settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect. Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2015).

Consequently, since the only way to compromise an FLSA claim is for the offers of settlement to be approved by this Court, the Rule 68 invalid offers of judgment made by Defendant Lackawanna County are null and void; and cannot be used in this matter. Rule 68 offers by their nature are never subject to the discretion of the district court; and therefore, could never be used against a plaintiff in an FLSA action.

**POINT TWO**
**If this Court considers the offers of judgment, they are invalid since they did not include an amount for attorney fees**

Pursuant to Rule 68's own language, the offer must include costs than accrued. See FRCP 68. Consequently, since Defendants did not include an amount for attorney fees and costs, the offers are invalid and cannot be used

against Plaintiffs. *Scheriff v. Beck*, 452 F. Supp. 1254 (D. Colo 1978); *Fulps v. The City of Springfield*, 715 F.2d 1088 (6th Cir. 1983).

As the *Scheriff* court noted when it held an offer of judgment defective:

Plaintiff also contends that the offer is fatally defective because it excludes attorney's fees then accrued. We agree. **Rule 68 requires that an offer of judgment include payment of costs then accrued.** In civil rights actions attorney's fees can constitute part of the costs. Rule 68 does not permit an offeror to choose which accrued costs he is willing to pay. Thus, the offer of judgment is invalid and Marshal Beck will not be awarded his costs which accrued after the date of the offer of judgment. *Scheriff v. Beck*, 452 F. Supp. 1254 (D. Colo 1978)(emphasis added); *Fulps v. The City of Springfield*, 715 F.2d 1088 (6th Cir. 1983).

Consequently, since Defendant failed to include an amount for attorney fees than accrued, Defendant's offers of judgment are fatally defective and cannot be used as a sword to reduce Plaintiffs' attorney fee petition. Therefore, the offers of judgments do not exceed the costs (i.e. attorney fees and costs) accrued at the time the offers were made; and cannot be used to stop the clock on attorney fees and costs.

**POINT THREE**
**Plaintiffs' counsel has sustained her burden since she has been paid**
**$400 per hour and another local attorney**
**has attested to that market rate**

"The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Public Interest Research*

*Group v. Windall*, 51 F.3d 1179 (3d Cir. 1995). "An attorney's customary billing rate can serve as 'an indicator for [the] Court to find the rate to be reasonable.'" *In re Johnson & Johnson Derivative Litig.*, 2013 U.S. Dist. LEXIS 180822.

Here, Plaintiffs' counsel has provided the $400 rate in two recent cases; and therefore, has provided proof of her usual billing rate. (Affidavit pp. 24-25). Additionally, she has provided an affidavit from Attorney Comitz attesting to the reasonableness of that rate along with the CLS chart showing the hourly rate of $435-$505 for lawyers practicing 16-20 years. (See Exhibits "C", "D"). Consequently, Plaintiff has established sufficient evidence of the market rate.

In *Rose*, Attorney Vito attested to the rate of lead counsel in a civil rights matter back in 2013 as $375. (See Exhibit "E"). Plaintiff also provides an Affidavit in support of a lawyer (Rebecca Gonzales who only had 10 years of experience) by Attorney Barry Dyller for the rate of $300, along with Attorney Dyller supporting the lead counsel in that case for the rate of $375. (See Exhibit "F"). Consequently, there is ample evidence that Plaintiffs' counsel's hourly rate requested is reasonable.

In the *Todd* case, your Honor awarded the hourly rate of $300 to three (3) lawyers on the matter, for a total hourly rate of $900. *Todd v. Luzerne County Children and Youth Services*, 04-2637 (See Exhibit "H"). Attorney Kevin Orloski, who had been practicing <u>only 6 years</u>, and listed in only 2 cases in the Middle

District obtained the rate of $300. (See Exhibit "G"). Mr. Orloski does not have a master's in law in Trial Advocacy, practiced 16 years, nor has he filed 135 cases in the Middle District alone not including other federal districts or state courts like Plaintiff's counsel.

Additionally, in *Lukawski*, Attorney Carlo Sabatini obtained the hourly rate of $300 in 2013. *Lukawski v. Client Services, Inc.*, 2013 U.S. Dist. LEXIS 166823. Attorney Sabatini requested $315, but Judge Nealon noted that "[having received the submitted affidavits by Plaintiff, having determined the background, [14 years] experience[1], and expertise of Plaintiff's counsel, ... considering the fact that <u>there was no trial or oral argument</u> in this matter, it is determined that a $300 per hour rate is appropriate for lead counsel." *Id.* (emphasis added).

Also, the other lawyers on that case received compensation as well, putting the total attorney fee hourly rate well above the rated requested here. Attorney Sabatini joined the practice of law the same time as Plaintiff's counsel. Consequently, there is no reason why Plaintiff's counsel should not obtain the requested rate given the fact she has advanced degrees, specialized trial training and worked this case alone.

The type of generalized sense of what Plaintiff's counsel should be paid based on prior cases is exactly the type of assessment that has been precluded by the Third Circuit. *Black Grievance Committee v. Philadelphia Electric Co.,* 802 F.2d

648, 652 (3d Cir. 1986). As the Third Circuit has noted "[a]ttorneys are not fungible … the question is what rate Trent commanded in the marketplace." *Black Grievance Committee,* 802 F.2d at 652. The Third Circuit also noted that "… the district court, in counsel fee litigation, can never serve as an 'expert witness' …." *Bell v. United Princeton Properties*, 884 F.2d 713, 718 (3d Cir. 1989).

Defendant points to cases that were decided in 2008, 2011 and 2013, which is over seven (7), four (4) and two (2) years ago; and clearly are not the "current" market rate. Moreover, here, the rates are based on the year of the petition -- 2015 -- and not when they activities were performed. "When attorney's fees are awarded, the current market rate must be used. See Rode, 892 F.2d at 1183; Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202, 1217 (N.J. 1995). The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed. See Rode, 892 F.2d at 1188-89 (describing petition based on current rates as premised on a theory of "delay compensation") Rendine, 661 A.2d at 1217 (To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed.")." *Lanni v. N.J.*, 259 F.3d 146 (3d Cir. 2001). Consequently, there is no question that the rate of $400 is reasonable based on the current market rate.

Additionally, according to the Laffey matrix, Plaintiffs' hourly rate is in compliance with the $435 rate given to lawyers back in 2012. (Exhibit "I"). In *Tenafly Eruv Assoc.*, the top three lawyers charged rates of $550.00, $500.00 and $350.00. *Tenafly Eruv Assoc. v. Borough of Tenafly*, 195 Fed. Appx. 93, 97 (3d Cir. 2006). The Third Circuit had no problem concluding that those rates were reasonable based on experience and "educational background". *Tenafly Eruv Assoc. v. Borough of Tenafly*, 195 Fed. Appx. at 97.

Likewise, in *Tucker*, the Eastern District concluded that pointing to case law is not sufficient to meet defendants' burden. As Judge Stengel found in *Tucker*, "[t]he only "evidence" that PHA offers is two cases from 1999 in which judges from the Eastern District of Pennsylvania reduced Mr. Donahue's rate from $265.00 to $150.00 per hour under similar factual circumstance. <u>Case law from 1999 is not "appropriate record evidence"</u> to prove what is a reasonable market rate <u>for legal services provided in 2005</u>, and I find it insufficient to rebut the plaintiff's prima facie case". *Tucker v. Philadelphia Housing Authority*, 2005 U.S. Dist. LEXIS 13678 (E.D. Pa. 2005)(Judge Stengel)(emphasis added). In that case, Judge Stengel awarded Plaintiff the requested rate of $300.00 an hour.

Similarly, here, an affidavit from the defense bar cannot be "appropriate record evidence" since it does not attest to the current market rate for

<u>plaintiffs' lawyers</u> in our market area. The affidavit submitted by Defense Attorney Frank Lavery is an insurance rate that he gets whether he wins, losses, or draws, which is inapposite to Plaintiffs' counsel who took this matter on a contingency basis.

<b><u>POINT FOUR</u></b>
<b>The Supreme Court eliminated the <i>Johnson</i> factors from consideration
on a fee petition opting for the lodestar method</b>

In *Perdue*, the Supreme Court eliminated the evaluation of the *Johnson* factors from consideration on a fee petition. *Perdue v. Kenny A.*, 559 U.S. 542 (2010). The Supreme Court specifically endorsed the lodestar approach developed by the Third Circuit and stated "… and unlike the Johnson approach, the lodestar calculation is 'objective' …, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny A.*, 559 U.S. 542, 505 (2010). Consequently, Defendant's counsel is misguided in the application of the *Johnson* factors to any claim for attorney fees.

<b><u>POINT FIVE</u></b>
<b>Plaintiffs were fully successful by obtaining judgment
before trial even began</b>

Defendant's claim that Plaintiffs were not fully successful is ridiculous. Here, Plaintiffs achieved summary judgment in their favor way before trial

ever began, and therefore, they were fully successful. Defendant's claimed demands made by the Plaintiffs are not in the record, and therefore, cannot be considered and are inaccurate. Second, if settlement negotiations are being considered in this matter, it was Defendant who offered zero before trial to resolve this matter during pretrial events, which should be held against them since they chose to litigate this matter to trial instead of settling the same with court approval, which Plaintiff's counsel attempted. It is clear that Defendant's counsel received a windfall in this matter since he got paid each hour he worked, as he worked, yet did not win this case. He chose that approach instead of settling this matter after the hours were calculated, claims evaluated, and pretrial discussions were occurring.

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. (emphasis added). As the Supreme Court noted in *Hensley* often plaintiff's claims in a civil rights action will arise from a common core of facts or related legal theories. *Hensley, supra.* Therefore, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on

the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933; 76 L. Ed. 2d 40 (1983).

"[W]here successful and unsuccessful claims share a common core of facts and related legal theories, or where counsel's time is dedicated to the litigation as a whole, the lodestar value should not be modified downwards". *See also, W. Va. Univ. Hosps. V. Casey*, 898 F.2d 357, 361 (3d Cir. 1991); *Northeast Women's Ctr v. McMonagle*, 889 F.2d 466, 475 (3d Cir. 1989).

The *Hensley* court noted that plaintiff's counsel should receive full attorney fees if he has achieved excellent results. *Id.* Importantly, the Supreme Court reasoned that when plaintiffs receive excellent results, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Thus, since Plaintiffs achieved summary judgment well before trial, they achieved excellent results.

In *Robinson*, the Tenth Circuit noted that "… when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award". *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). As stated by

the court, "[w]hen a plaintiff achieves most or all of what she aimed for in a civil rights lawsuit, her lawyer should receive a fully compensatory fee". *Id.*

In *Grove*, Judge Rambo stated "[w]hen a plaintiff prevails on some but not all of its asserted grounds for relief, the court must look to the nature of all claims alleged to determine whether time spent on losing claims should be compensated. ... If all claims are legally and factually related and it appears that counsel's time has been spent on the litigation as a whole, compensation for work on all of the claims, even unsuccessful ones, is appropriate." *Grove v. City of York*, 2007 U.S. Dist. LEXIS 20255.

Here, all claims were based on the same facts, and therefore, Defendants cannot abdicate responsibility for having to pay for those time allotments since they were for the litigation as a whole.

**POINT SIX**
**Disproportion between damages awarded and attorney fee requested is not a proper basis for reducing a fee petition**

"We re-affirm our holdings ... that it is not permissible for a trial judge to make a reduction in the attorney's fee award solely on the basis of proportionality." *Haines v. Forbes Road School Dist.,* 2010 WL 56101 (M.D. Pa. 2010). In *Kassim*, the 2nd Circuit remanded an award of attorney fees, opining "[i]f the district court reduced the fee based on the perceived disproportionality of such a large fee in a matter involving only $2500, this

was error for at least two reasons. First, in litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expand enormously. It is therefore difficult to generalize about the appropriate size of the fee in relation to the amount in controversy. Second, § 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." *Kassim v. City of Schenectady*, 415 F.3d 240 (2d Cir. 2005).

The 2nd Circuit emphasized, "[r]easoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation. *See Quaratino v. Tiffany & Co.,* 166 F.3d 422 (2d

Cir.1999) (*Quaratino II* ) (rejecting a "billing judgment" rule that would limit the awardable fee to one rationally related to the recovery that could be expected *ex ante* ); *Cowan v. Prudential Ins. Co. of Am.,* 935 F.2d 522 (2d Cir.1991); *DiFilippo v. Morizio,* 759 F.2d 231 (2d Cir.1985); *see also Lunday v. City of Albany,* 42 F.3d 131, 134–35 (2d Cir.1994) (per curiam); *Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 160 (2d Cir.1992); *Grant v. Bethlehem Steel Corp.,* 973 F.2d 96, 101–02 (2d Cir.1992). If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error." *Id.*

Consequently, no reduction based on the proportionality between the awards and the request for attorney fees is appropriate.

**POINT SEVEN**
**Entries are not vague, cryptic or lack specificity**

Defendants claim that Plaintiffs' counsel's time entries are not specific enough; however, Third Circuit caselaw makes clear counsel has included far more than what is required. Plaintiffs have responded to all itemized time in Defendant's Exhibit "A". Moreover, Defendant's objections are not specific

enough since they simply state that Defendant's counsel does not like the way Plaintiffs' counsel tracks her time.

The Third Circuit has stated "... it is not necessarily to know the exact number of minutes spent nor the <u>precise activity</u> to which each hour was devoted nor the specific attainments of each attorney." *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)(emphasis added). Moreover, the entry need only provide " ... some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys ..." *Id.*

In *Rode*, the Third Circuit reversed based on the district court's finding entries vague noting "Appellants submitted a computer-generated time sheet for each attorney, paralegal and law clerk who worked on the case. ... These various submissions provided enough information as to what hours were devoted to various activities and by whom for the district court to determine if the claimed fees are reasonable." *Id.* at 1191. Additionally, as noted by this district in *Haines*, "... Plaintiff's fee petition states times spent (meted out to the nearest tenth of an hour), the date, the type of activity involved, and in cases of conference or telephone calls, the person(s) to whom the activity was directed. Defendant cites to no case requiring that each time submission include the precise legal topic

covered. … The entries are not overly vague …" *Haines v. Forbes Road School Dist.,* 2010 WL 56101 (M.D. Pa. 2010).

Likewise, here Plaintiff's counsel provided a computer-generated time sheet for her activities, and certainly she has no obligation to discuss attorney client information within her time entries for them to be found specific enough. Responding to a client's inquire on the case is clearly compensable time. Your Honor has approved Plaintiffs' billing entries in several fee petitions, such as *Smith v. Dunmore Borough*, *Dee v. Dunmore Borough*, *Guarnieri v. Duryea*, *Lohman v. Duryea*, and *Supinski v. UPS*. Consequently, Defendant's argument that Plaintiffs' time entries are deficient does not hold water.

## POINT EIGHT
### Review of news media reports about a case is compensable

In *Davis*, the Ninth Circuit held "[p]revailing civil rights counsel are entitled to compensation for the same tasks as a private attorney. Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the same." *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992).

"As Justice Kennedy observed in Gentile v. State Bar of Nevada, … 'An attorney's duties do not begin inside the courtroom door. He or she cannot ignore the practical implications of a legal proceeding for the client.' … Nor can counsel afford to ignore collateral for a where they may be useful in advancing a client's interests. Thus, '[w]here the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients.'" *Former Emples. of BMC Software, Inc. v. United States Sec'y. of Labor*, 519 F.Supp.2d 1291 (Ct. Int'l Trade, 2007).

Consequently, since Plaintiffs' counsel needs to be appraised of the articles that portray the case to the community, possible jurors, such time is compensable.

## POINT NINE
**Trial time was spent on the litigation itself with the majority of claims against Lackawanna County (FLSA, CBA, PWPA), consequently, trial time should not be reduced**

Defendant seek a 50% reduction of all time spent on this matter from September 15, 2015, until the Rule 50 motion; however, that makes no sense since the majority of claims were against Lackawanna County not the Sheriff's Association. Plaintiff had three (3) claims against Lackawanna County versus

one against the Sheriff's Association. Consequently, no deduction is required since all activities supported the litigation as a whole.

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. (emphasis added). As the Supreme Court noted in *Hensley* often plaintiff's claims in a civil rights action will arise from a common core of facts or related legal theories. *Hensley, supra.* Therefore, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933; 76 L. Ed. 2d 40 (1983).

"[W]here successful and unsuccessful claims share a common core of facts and related legal theories, or where counsel's time is dedicated to the litigation as a whole, the lodestar value should not be modified downwards". *See also, W. Va. Univ. Hosps. V. Casey*, 898 F.2d 357, 361 (3d Cir. 1991); *Northeast Women's Ctr v. McMonagle*, 889 F.2d 466, 475 (3d Cir. 1989).

The *Hensley* court noted that plaintiff's counsel should receive full attorney fees if he has achieved excellent results. *Hensley*, 461 U.S. at 435. Importantly, the Supreme Court reasoned that when plaintiffs receive excellent results, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.

In *Robinson*, the Tenth Circuit noted that "… when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award". *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). As stated by the court, "[w]hen a plaintiff achieves most or all of what she aimed for in a civil rights lawsuit, her lawyer should receive a fully compensatory fee". *Id.*

In *McClain*, the Fifth Circuit vacated and remanded an attorney fee award in part finding that the district court did not adequately explain the application of a "blanket reduction of 25% to all of the billable hours reported by plaintiff's counsel". *McClain v. Lufkin Ind., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008).

The Sixth Circuit in the *Jordan* case concluded that the district court abused its discretion when it reduced the lodestar amount based on "results obtained". *Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006). In that case,

the plaintiff was successful on racial harassment and retaliation claims and the jury awarded $175,000.00 in damages. *Jordan*, 464 F.3d at 593.

The *Jordan* court found that the plaintiff had obtained results "nothing short of exemplary". *Jordan*, 464 F.3d at 604. The court concluded that Jordan had "prevailed on a substantial number of claims that he pursued, obtained virtually all of the types of relief he requested – including back and front pay and compensatory damages. Any reduction from the lodestar amount of attorney's fees is not only unwarranted but an abuse of discretion". *Jordan*, 464 F.3d at 604.

## POINT TEN
## Travel time is not unreasonable

All travel time included an activity such as serving the Complaint, picking up or dropping off exhibits, and serving subpoenas. 1 hour for these activities is not unreasonable since it takes ½ hour to go each way. As for the activity of servicing the initial complaint, additional time was needed to properly serve the Defendants. Defendants have not offered a time that is more reasonable than 1 hour back and forth between Scranton and Wilkes-Barre because there is none. 1 hour is an appropriate time to travel both ways to Scranton and Wilkes-Barre.

## POINT ELEVEN
## Legal assistant took notes, coordinated witnesses and helped clients at trial, which are all necessary and compensable

Defendant disputes that a legal assistant was necessary at trial; however, the legal assistant provided invaluable assistance, such as note taking, coordinating witnesses, and helping clients with their trial needs. Consequently, all time was compensable.

As for making the trial binders, this is not a normal office task, but rather a detailed task that requires much attention since having the wrong exhibit labeled or mismarked could be disastrous at trial. Consequently, this absolutely, necessary task of compiling trial binders is compensable time.

## POINT TWELVE
## Rolon was not signed up when the other Plaintiffs filed suit; and all time spent was on the Rolon matter,
## which had separate filings, therefore, is compensable

Although Defendant's counsel got paid for creating separate discovery and documents in the *Rolon* matter, he now has the audacity to seek a 50% reduction of time spent solely on the *Rolon* matter by Plaintiff's counsel, which is another reason why seeing Defendant's bills and invoice would be ideal for the Court to help in its evaluation of Plaintiffs' fee petitions. Once the cases were consolidate, all time spent on Rolon was cataloged in the consolidated case heading. The filings do not mirror each other since Rolon's answers to discovery were

different. Consequently, no deduction should be given since Defendant's counsel got paid for that time, why shouldn't Plaintiff's counsel?

The *Prandini* court also acknowledged that:

> … although the same district court judge passed upon the fee applications in Vallo and Prandini, there is no evidence in the record before this court that the hours attributed by Malakoff to his work in Prandini were the same hours for which charges were made in Vallo. (To the contrary, the evidence in this record indicates that Malakoff had not duplicated charges, but rather had charged Either Prandini or Vallo for his time.) Similarly, there is no evidence, nor are there any findings, as to which hours benefited both cases equally. Absent evidence to support the district court's finding of duplication or overlap, we cannot sustain the 10% fee reduction imposed by the district court. *Prandini, supra.*

## POINT THIRTEEN
### Defendants offer no proof that the hourly rate of $100 for Legal Assistants and $150 for Legal Researchers are unreasonable

More than two years ago, the rate for Legal Assistants was approved of $75 and Legal Researchers of $100. *Dee v. Borough of Dunmore*, 2013 U.S. Dist. LEXIS 25273. Further, this district court has awarded $90 back in 2007 for the work of a paralegal, which is comparable to Plaintiffs' counsel's title of Legal Assistant. *Sallitt v. Luzerne County*, 07-361, Doc. No. 135. Additionally, Attorney Vito bills his paralegal at $100 back in 2013 (See Exhibit "E"). Consequently, the time allotted for legal assistants is well documented.

As for Legal Researchers, you Honor has already approved the rate of $100 in the case of *Supinski v. UPS*, 06-793, Docket No. 364, in 2012. It is now 2015, three years later, and a modest increase is necessary to reflect the current market rate for Legal researchers. Consequently, the hourly rate and the billing activities are compensable.

## POINT FOURTEEN
**The time spent preparing a fee petition is awarded**

In *Planned Parenthood*, the Third Circuit held "[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application." *Planned Parenthood v. AG*, 297 F.3d 253 (3d Cir. 2002). Consequently, Plaintiffs should be awarded the additional 10 hours associated with preparing this Reply Brief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for attorney fees and costs.

Respectfully Submitted:

By: /s Cynthia L. Pollick
Cynthia L. Pollick, Esquire, LLM
Pa. I.D. No.: 83826
363 Laurel Street
Pittston, PA 18640
(570) 654-9675
pollick@lawyer.com

## CERTIFICATE OF WORD COUNT

Cynthia L Pollick, Esquire, hereby certifies that the foregoing Brief contains 5,261 words in compliance with this Court's Order.

s/Cynthia L. Pollick
Cynthia L. Pollick, Esquire

## CERTIFICATE OF SERVICE

Cynthia L Pollick, Esquire, hereby certifies that on January 6, 2016, she served a copy of Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Attorney Fees and Costs by serving a copy via electronically on Defendant's counsel:

Harry Coleman, Esquire
Law Office of Harry Coleman
41 North Main Street, Suite 316
Carbondale, PA 18407

s/ Cynthia L. Pollick
Cynthia L Pollick, Esquire
