**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL SOURYAVONG, et al.,

    Plaintiffs,

        v.

LACKAWANNA COUNTY, et al.,

    Defendants.

CIVIL ACTION NO. 13-CV-1534

(JUDGE CAPUTO)


NELSON ROLON,

    Plaintiff,

        v.

LACKAWANNA COUNTY, et al.,

    Defendants.

CIVIL ACTION NO. 13-CV-1581

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court are five (5) post-trial motions:  (1) Plaintiffs' motion for liquidated damages (Doc. 147); (2) Plaintiffs' motion to strike Defendant's certificate of counsel as to Rule 68 Offers (Doc. 158); (3) Plaintiffs' motion for pre-judgment interest (Doc. 160); (4) Plaintiffs' motion for attorney fees and costs (Doc. 163); and (5) Plaintiffs' motion for defense counsel's time records, bills, and invoices (Doc. 179).  Because Defendant Lackawanna County ("Defendant" or the "County") failed to establish that its violation of the Fair Labor Standards Act ("FLSA") was in good faith, Plaintiffs' motion for liquidated damages will be granted.  However, because a plaintiff cannot be awarded both liquidated damages and pre-judgment interest under the FLSA, Plaintiffs' motion for pre-judgment interest will be denied.  Because Defendant's Rule 68 Offers are relevant to my determination of attorney fees and costs, Plaintiffs' motion to strike will also be denied.  Unlike Defendant's Rule 68 Offers, however, defense counsel's time records and billing invoices are not relevant to my determination of attorney fees or costs and Plaintiff's motion for these records will therefore be denied.  Finally, because Plaintiffs

have not demonstrated their entitlement to all fees and costs as requested, their motion for attorney fees and costs will be granted in part and denied in part.

## I. Background

This action represents the consolidation of two (2) matters arising out of the County's failure to pay overtime to Plaintiffs Michael Souryavong, Edwin Velez, and Nelson Rolon (collectively "Plaintiffs"), employees who were working in excess of forty (40) hours per week for the County.  Plaintiffs were all members of the Lackawanna County Deputy Sheriff's Association (the "Association"), which is the union that represents Lackawanna County's Deputy Sheriffs for purposes of collective bargaining with respect to wages, hours, and other terms and conditions of employment.

On June 7, 2013, Plaintiffs Souryavong and Velez initiated this action against the County and the Association by filing a Complaint (Doc. 1).  They asserted claims for a breach of the collective bargaining agreement and for violations of the FLSA, the Pennsylvania Wage Payment and Collection Law ("WPCL"), and the Pennsylvania Minimum Wage Act ("PMWA") against the County.  Plaintiffs also asserted a claim against the Association for a breach of its duty of fair representation.

On June 12, 2013, Plaintiff Rolon filed a similar complaint asserting the same claims against the same defendants.  (*Rolon v. Lackawanna County et al.*, No. 13-cv-1581, M.D. Pa., Doc. 1.)  All three (3) plaintiffs are represented by Cynthia Pollick, Esq.  Both cases were consolidated under the caption *Souryavong et al. v. Lackawanna County, et al.*, No. 13-cv-1534.

On May 27, 2015, summary judgment in favor of Plaintiffs was granted in part and denied in part.  (Docs. 82 & 83.)  Summary judgment was granted for Plaintiffs with respect to claims based on events relating to the County's failure to pay Plaintiffs within the FLSA's minimal statute of limitations, which is two (2) years.  The remainder of

Plaintiffs' motion for summary judgment with respect to claims based on events that fell outside of the two (2) year statute of limitations was denied because there remained disputes of material fact as to (1) whether the County's FLSA violation was willful,[1] which would expand the statute of limitations to three (3) years, and (2) whether the statute of limitations should be equitably tolled pursuant to 29 C.F.R. § 516.4.[2]  Summary judgment in favor of the Association on Plaintiffs' breach of duty of fair representation claim was also denied because there remained material facts in dispute relating to whether the Association acted in bad faith in how it proceeded with Plaintiffs' grievances.

On November 2, 2015, a consolidated jury trial commenced.  At the close of Plaintiffs' case, judgment as a matter of law was granted in favor of the Association.  On November 5, 2015, trial concluded and judgment was entered in favor of Plaintiffs and against the County on their FLSA claims with respect to events that occurred within the minimum two (2) year statute of limitations.[3]  The jury awarded Souryavong damages in

---

[1]     The FLSA provides for a three (3) year statue of limitations if the violation is willful, and a two (2) year statute of limitations if the violation is not willful.  Fair Labor Standards Act of 1938, 29 U.S.C. § 255(a).

[2]     Pursuant to 29 C.F.R. § 516.4,

> Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as described by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy. . . .

Failure to post this required notice will toll the running of the one hundred eighty (180) day administrative filing period, at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights.  *Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir. 1977).

[3]     Judgment was limited to the minimum two (2) year statute of limitations because I found that there was insufficient evidence presented that the County *willfully* violated the FLSA.  *See* 29 U.S.C. § 255(a) (allowing for a three (3) year statute of

the amount of $608.30, Velez in the amount of $4,672.50, and Rolon in the amount of $307.50.  Since the conclusion of trial, Plaintiffs have filed five (5) motions, each of which are discussed below.

## II. Discussion

**A.      Plaintiffs' Motion for Liquidated Damages (Doc. 147)**

On November 5, 2015, Plaintiffs filed a motion for liquidated damages.  On November 11, 2015, the County opposed Plaintiffs' motion, arguing that Plaintiffs are not entitled to liquidated damages because the County "acted in good faith" relative to Plaintiffs' overtime.  Specifically, the County asserts that it "had objectively reasonable grounds for believing that it was in compliance with the FLSA and was in fact in compliance with the FLSA in each department of its governmental unit but failed, as the result of a computer generated program, to aggregate an employee's hours from department to department."  (Doc. 165, at 6.)

On November 20, 2015, Plaintiffs filed a reply brief, arguing that they need not establish an intentional violation of the FLSA to recover liquidated damages, and that lack of knowledge is insufficient to establish good faith.  Plaintiffs emphasize that the record here is silent as to efforts made by Lackawanna County to comply with the FLSA. Plaintiffs further argue that even after finding out that the County was violating the FLSA in March 2011, it continued to violate the FLSA by failing to pay Plaintiff Velez his overtime pay up until January 2012, therefore demonstrating an ***intentional*** violation of the FLSA.  This motion has been fully briefed and is now ripe for adjudication.

Plaintiffs' motion for liquidated damages will be granted.  The FLSA provides for

---

limitations for causes of action arising out of a willful violation of the FLSA). Additionally, the jury rejected Plaintiffs' equitable tolling theory, and Plaintiffs' recovery was therefore limited to events that occurred within the two (2) years prior to the filing of their complaints.

4

liquidated damages and states that such damages shall be paid unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260.  In order to show "good faith," the defendant employer "must show that he took ***affirmative steps*** to ascertain the Act's requirements, but nonetheless violated its provisions." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907-10 (3d Cir. 1991) (emphasis added).  The fact that an employer had been violating the FLSA for a long time without complaints from employees does not demonstrate good faith as required by the statute. *Id.* at 908.

Here, there was no evidence that the County took affirmative steps to ascertain the FLSA's requirements or acted in "good faith" with regard to its failure to pay overtime to Plaintiffs.  Although the County requested a hearing on the motion "should the Court so require," such a hearing would be unnecessary since any evidence of good faith that the County might have on the issue should have been presented at trial, since a critical issue for the jury to determine was whether the County willfully violated the statute.  Absent a showing of affirmative steps that Defendant took to comply with the FLSA, Defendant's mere assertion that the computer system failed to capture overtime hours of Plaintiffs fails to establish good faith.  *See Martin*, 940 F.2d at 907-10 (concluding that the district court had "no discretion to deny liquidated damages" because the defendant had not demonstrated that it took affirmative steps to ascertain the legality of its pay practices and remanding for an order awarding mandatory liquidated damages).  Therefore, Plaintiffs' motion for liquidated damages will be granted.

**B.      Plaintiffs' Motion to Strike Defendant Lackawanna County's Certificate of Counsel as to Rule 68 Offers (Doc. 158)**

On November 5, 2015, Defendant filed a Certificate of Counsel as to Rule 68 Offers.  (Doc. 146.)  This document attaches offers that the County made to Plaintiffs on

November 28, 2014, pursuant to Rule 68 of the Federal Rules of Civil Procedure.  The offers allowed judgment to be entered against the County to Plaintiff Souryavong in the amount of $12,124.72; Plaintiff Velez in the amount of $6,356.04, and Plaintiff Rolon in the amount of $854.41, excluding attorney's fees, yet including all of Plaintiffs' claims for relief.  None of these offers were accepted by Plaintiffs.  After proceeding to trial, each plaintiff was awarded an amount for less than the amount in the Rule 68 Offer: Souryavong was awarded $608.30, Velez was awarded $4,672.50, and Rolon was awarded $307.50.  Plaintiffs have moved to strike Defendant's Certificate of Counsel attaching these Rule 68 offers, arguing that the offers are null and void because they were not approved by the Court and that they serve no purpose since they were not filed in response to anything filed by Plaintiffs.

Plaintiffs' motion to strike will be denied.  First, the offers are relevant to my assessment of costs.  Where a plaintiff fails to obtain a judgment for an amount more favorable than the amount in an unaccepted Rule 68 offer, the plaintiff may not recover costs incurred after the offer was made.  *See* Fed. R. Civ. P. 68(d) (providing that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made").  For example, in *Haworth v. State of Nevada*, the Ninth Circuit Court of Appeals explained that the FLSA fee-shifting statute requiring the violator to pay the plaintiff's costs is overriden by Rule 68 so that where a valid Rule 68 offer of judgment has been rejected, and judgment is obtained for less than the settlement offer, the ***plaintiffs must bear their own costs of suit incurred after the Rule 68 offers were made***.  56 F.3d 1048, 1052 (9th Cir. 1995) (reversing the district court's award of costs incurred after the defendant's Rule 68 offer was made because the pre-trial settlement offer was approximately $240,000.00 more than the judgment ultimately obtained by the plaintiffs).  Therefore, the County's Rule 68 offers are relevant to my determination of an appropriate award of costs.

Second, Defendant's Rule 68 Offers are relevant to my assessment of attorney fees.  When a plaintiff rejects a Rule 68 offer and judgment is obtained for less than that

offer, "these circumstances **must** be considered by the district court in determining what [attorney's] fee is reasonable." *Haworth*, 56 F.3d at 1052 (emphasis added); *see also Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 82 (3d Cir. 2004) (affirming district court's reduction of requested attorney fees award based on reasonableness and its consideration of the rejected Rule 68 Offer); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1325 (M.D. Fla. 2001) (explaining that when a Rule 68 Offer is rejected, the reasonableness of an attorney fee award under the FLSA will depend on the court's consideration of the results the plaintiff obtained by going to trial **compared to the Rule 68 Offer**); *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 220-21 (D. Mass. 2004) (considering the plaintiff's refusal of the defendant's Rule 68 Offer as a factor in determining a reasonable award of attorney fees).  However, attorney fees incurred after the Rule 68 offer was made are not **per se barred** in the same way costs are.  Rule 68 will only bar attorney fees incurred after the offer was made when the underlying fee-shifting statute defines "costs" to include attorney fees. *Marek*, 473 U.S. at 8-9; *Haworth*, 56 F.3d at 1051.  In *Marek v. Chesny*, the Supreme Court held that because section 1983's fee-shifting statute defines costs to include attorney fees, Rule 68 applied to bar a recovery for any attorney fees incurred after a Rule 68 offer was made when the plaintiff recovered less by judgment than the settlement offer. *Marek*, 473 U.S. at 9; *see also* 42 U.S.C. § 1988(b) (defining "a reasonable attorney's fee as part of the costs").

However, unlike the fee-shifting provision of section 1988, the FLSA does not define attorney fees as part of costs. *See* 29 U.S.C. § 216(b) ("The court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *see also Haworth*, 56 F.3d at 1051 (explaining the same).  Therefore, in the FLSA context, the failure of a plaintiff to recover a judgment greater than an amount offered pursuant to Rule 68 does not preclude the recovery of reasonable attorney fees for services rendered after the Rule 68 offer was made. *Haworth*, 56 F.3d at 1051; *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1325 (M.D. Fla. 2001).  However, the

Rule 68 offer must be considered in determining whether the lodestar calculation of a reasonable attorney fee is excessive and whether a downward departure from the lodestar is warranted.  *Haworth*, 56 F.3d at 1051-52 (holding that "in an FLSA case when a Rule 68 offer of judgment has been rejected, and judgment is obtained for less than the settlement offer, these circumstances ***must*** be considered by the district court in determining what fee is reasonable" and ***vacating*** district court's award of attorney fees); *Wales*, 192 F. Supp. 2d at 1325, 1327 (citing *Haworth* to note that a Rule 68 offer must be considered in determining the reasonableness of an attorney fee award and therefore "substantially" reducing the lodestar because the requested attorney fee award was not justified by "the limited monetary recovery on the FLSA count").  Accordingly, Defendant's Rule 68 Offers of Judgment are relevant to my assessment of both costs and attorney fees.  Plaintiffs' motion to strike will be denied.

The cases that Plaintiffs cite in support of their motion are inapposite.  First, Plaintiff relies on *Luna v. Del Monte Fresh Produce*, No. 1:06-CV-2000-JEC, 2008 WL 754452 (N.D. Ga. Mar. 19, 2008), to argue that FLSA claims may only be abridged or settled after a court reviews the proposed settlement to ensure that it is fair and reasonable.  In *Luna*, the court granted the plaintiffs' motion to strike the defendants' Rule 68 offers, but only because the defendants had not presented the Rule 68 offers to the court.  *Id.* at *12.  The court explained that this was with good reason because the parties had not yet conducted any merits discovery or provided even an estimate as to the amount the plaintiffs might be entitled to recover on their FLSA claims, and therefore, there was "absolutely no basis for determining whether the offers [were] fair and reasonable."  *Id.*  Here, in contrast to the facts in *Luna*, Defendant has presented its Rule 68 Offer to this Court.  In addition, trial has already concluded and judgment entered; therefore, there ***is*** a basis for determining whether the offers were fair and reasonable.

Plaintiffs also rely on *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), to argue that FLSA claims cannot be settled unless the district court approves of the

8

settlement and enters a stipulated judgment. However, this is irrelevant. There has been no proposed settlement that Plaintiffs and Defendant have agreed upon and proposed to this Court for approval. Rather, the proposed offer was rejected and this case went to trial where the parties were judged by a jury of their peers. Defendant is not submitting the offer for approval, but for consideration in the award of costs and attorney fees, which is an issue that is neither addressed by *Cheeks* nor *Lynn's Food Stores*. *Cheeks* and *Lynn's Food Stores* addressed the very specific issue of whether parties could stipulate to settle an FLSA claim without approval of a district court or the Department of Labor. Neither of these cases even mention Rule 68, nonetheless discuss its relevance in the context of a fee petition. Critically, not a single one of Plaintiffs' cases address the issue of whether I may consider rejected Rule 68 offers in the context of attorney fee petitions. Therefore, Plaintiffs' cases do not apply here.

Additionally, Plaintiffs' reply brief in support of their motion for attorney fees raises a new argument as to why I may not consider the County's Rule 68 Offers. Plaintiffs argue that I may not consider the Rule 68 Offers because they do not include an amount for attorney's fees and costs and are therefore invalid. (Doc. 185, at 3-4.) The County's Offer of Judgment to Souryavong provides as follows:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant Lackawanna County hereby offers to allow Judgment to be entered against it in this action in the amount of $12,124.72, excluding attorney's fees, yet including all of Plaintiffs' claims for relief. This Offer of Judgment is made for the purposes specified in Federal Rule of Civil Procedure 68, and is not to be construed as either an admission that Defendant Lackawanna County is liable in this action, or that the Plaintiff, Michael Souryavong has suffered any damages. This Offer of Judgment shall not be filed with the Court unless (a) accepted or (b) in a proceeding to determine costs and attorney fees.

(Doc. 146, at 3-4.) The County's Offers to Velez and Rolon contain similar language, only with different amounts. (Doc. 146, at 5-6, 8-9.)

However, as previously explained by this Court and affirmed by the Third Circuit Court of Appeals, this does not preclude my consideration of the County's Rule 68 Offers to assess costs and attorney fees. *See Dee v. Borough of Dunmore*, No. 3:05-CV-1342,

2013 WL 685144, at *4-*6 (M.D. Pa. Feb. 25, 2013) (rejecting Attorney Pollick's argument that a Rule 68 Offer of Judgment was defective because it did not explicitly provide for fees and costs), *aff'd*, 548 F. App'x 58 (3d Cir. 2013); *see also Carroll v. Clifford Twp. et al.*, No. 3:12-0553, 2015 WL 7016435, at *1 (M.D. Pa. Nov. 12, 2015) (precluding the recovery of costs made after the Rule 68 Offer of Judgment was rejected where the offer did not include an amount for costs or attorney fees).  Plaintiffs rely on two (2) cases from outside of the Third Circuit for their assertion that a Rule 68 Offer is invalid for failure to include an amount for costs and attorney fees:  *Scheriff v. Beck*, 452 F. Supp. 1254 (D. Colo. 1978); and *Fulps v. The City of Springfield*, 715 F.2d 1088 (6th Cir. 1983).  However, the Supreme Court of the United States has since clarified the language of Rule 68 to reject Plaintiffs' interpretation of the Rule:

> *We do not read Rule 68 to require that a defendant's offer itemize the respective amounts being tendered for settlement of the underlying substantive claim and for costs*.
>
> The critical feature of this portion of the Rule is that the offer be one that *allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued*.  In other words, *the drafters' concern was not so much with the particular components of offers, but with the judgments to be allowed against defendants*. . . . Accordingly, *it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is allowing for costs, or, for that matter, whether it refers to costs at all.  As long as the offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer will be valid*.

*Marek v. Chesny*, 473 U.S. 1, 6 (1985) (emphases added).  Therefore, "it is immaterial whether [Defendant's] offer recites that costs are included."  *Id.*  As long as the County's Offer "does not implicitly or explicitly provide that the judgment not include costs," it will be valid.  Here, the County's Offers make clear that costs may be determined and recovered by a court at a later date, and are therefore valid.  (Doc. 146, at 4 ("This Offer of Judgment shall not be filed with the Court unless (a) accepted or (b) *in a proceeding to determine costs and attorney fees*.") (emphasis added).)  Accordingly, I may properly consider them in assessing attorney fees and costs.  Plaintiffs' motion to strike will be denied.

**C.      Plaintiffs' Motion for Pre-Judgment Interest (Doc. 160)**

On November 12, 2015, Plaintiffs filed a motion for pre-judgment interest.
Defendant opposed the motion, conceding that Plaintiffs are entitled to pre-judgment
interest but arguing that Plaintiffs cannot recover both pre-judgment interest and
liquidated damages under the FLSA.  Although Plaintiffs have not filed a reply, their time
to file one has expired and this motion is now ripe for adjudication.

Because Defendant is correct that Plaintiffs cannot recover both pre-judgment
interest and liquidated damages under the FLSA, Plaintiffs' motion will be denied.  The
Supreme Court has held that plaintiffs are precluded from recovering both liquidated
damages and interest on their wages in FLSA cases.  *See Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697, 714-16 (1945); *see also id.* at 715 ("Interest is not recoverable in
judgments obtained under Section 16(b).").  The Court explained that by enumerating the
sums recoverable in an FLSA action under Section 16(b), Congress "meant to preclude
recovery of interest on minimum wages and liquidated damages."  *Id.* at 716.  The
Supreme Court further explained that "[t]o allow an employee to recover the basic
statutory wage and liquidated damages, with interest, would have the effect of giving an
employee double compensation for damages arising from delay in the payment of the
basic minimum wages."  *Id.* at 715; *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d
896, 910-11 (vacating the lower court's award of pre-judgment interest and remanding for
an award of liquidated damages because the purpose of liquidated damages under
section 16(b) is to compensate employees for any losses caused by delayed receipt of
overtime wages they are due and awarding pre-judgment interest would serve the same
purpose as liquidated damages).

In support of their motion, Plaintiffs rely on *Starceski v. Westinghouse Electric
Corp.*, 54 F.3d 1089 (3d Cir. 1995), a case where the Third Circuit reversed a trial court's
denial of pre-judgment interest.  However, *Starceski* involved the Age Discrimination in
Employment Act ("ADEA"), **not** the FLSA.  In concluding that a plaintiff could be awarded
both pre-judgment interest and liquidated damages in an ADEA case, the Third Circuit

explicitly rejected incorporating into the ADEA *FLSA's prohibition* of awards for both pre-judgment interest and liquidated damages:

> Accordingly, we reject the reasoning of those courts that believe Congress intended to incorporate into the ADEA all of the damage provisions of the Fair Labor Standards Act ("FLSA"), including its *prohibition of concomitant awards for pre-judgment interest and liquidated damages.* See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715, 65 S.Ct. 895, 906, 89 L.Ed. 1296 (145) (FLSA plaintiff cannot recover both liquidated damages and pre-judgment interest because the former serve "as compensation for delay in payment of sums due under the Act").

*Id.* at 1102 (emphasis added).  Therefore, because Plaintiffs may not recover both pre-judgment interest and liquidated damages for their FLSA claims, Plaintiffs' motion for pre-judgment interest will be denied.

**D.    Plaintiffs' Motion for Attorney Fees and Costs (Doc. 163)**

**1.    Attorney Fees**

On November 13, 2015, Plaintiffs filed a motion for attorney fees and costs. (Docs. 163 & 164.)  Plaintiffs request a $400.00 hourly rate for 367.6 hours billed by Attorney Pollick, totaling $147,040.00 in attorney fees.  Plaintiffs also seek a $100.00 hourly rate for 98.1 hours billed by a legal assistant, totaling $9,810.00 in legal assistant fees, and a $150.00 hourly rate for 16.75 hours of billed by a legal researcher, for a total of $2,512.50.  Plaintiffs further seek $2,800.00 for seven (7) hours spent preparing the motion for attorney fees and $4,000.00 for an additional ten (10) hours associated with preparing the reply.  Plaintiffs' total request for attorney fees, including fees preparing this petition and for a legal assistant and a legal researcher, amounts to $166,162.50.

Defendant has opposed Plaintiffs' motion, objecting to Plaintiffs' requested hourly rates for Attorney Pollick and legal staff as well as the number of hours for which they request compensation.  A hearing on Plaintiffs' motion was held on January 26, 2016.[4]

---

[4]    This hearing was held at the Defendant's request, in which Plaintiffs did not concur.  However, given the parties' vigorous dispute over the requested fee award, this hearing was necessary.  *See, e.g.*, *Smith v. Phila. Hous. Auth.*, 1073 F.3d 223, 225 (3d Cir. 1997) ("If hourly rates are disputed, the district court *must* conduct a hearing to determine the reasonable market rates.") (emphasis added).

Plaintiffs' motion is now ripe for disposition.

Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  In FLSA cases, courts have analyzed attorney fee requests using the lodestar method, which multiplies the number of hours counsel reasonably worked by a reasonable hourly rate.  *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001).  When calculating the lodestar, a court should exclude hours that are "excessive, redundant, or otherwise unnecessary."  *Id.* at 178.  A court should also reduce the number of hours requested "by the number of hours spent litigating claims on which the party did not succeed . . . and for which the fee petition inadequately documents the hours claimed."  *Id.*; *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (explaining that a court may "deduct hours when the fee petition inadequately documents the hours claimed").  However, the district court cannot decrease a fee award based on factors not raised at all by the adverse party.  *Rode*, 892 F.2d at 1183.  Because I find that Plaintiffs' requested hourly rate of $400.00 is excessive and that several of the hours billed are incompensable, Plaintiffs' requested award for fees and costs will be reduced as follows.

> a.    **Hourly Rate**

To determine a reasonable hourly rate, courts apply a burden-shifting analysis. *See Evans v. Port Auth. of N.Y.*, 273 F.3d 346, 361 (3d Cir. 2001).  First, the plaintiff bears the burden of establishing a prima facie case by producing sufficient evidence of what constitutes a reasonable market rate "for the essential character and complexity of the legal services rendered."  *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).  A reasonable market rate is "calculated according to the prevailing market rates in the relevant community."  *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."

13

*Maldonado v. Houston*, 256 F.3d 181, 184 (3d Cir. 2001) (citations omitted).  The prevailing party bears the burden of establishing that the requested rate meets this standard through "satisfactory evidence, in addition to the attorney's own affidavits." *Blum*, 465 U.S. at 886 n.11.  The court may also consider the relative simplicity of the case, the quality of counsel's moving papers, and "its perception of counsel's skill and experience during the trial of the underlying matter."  *Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81-82 (3d Cir. 2004) (affirming district court's reduction of requested hourly rate in FLSA action based on the "relative simplicity of [the] case, its barely successful outcome when one considers the amount of money sought by the plaintiff, and [plaintiff's counsel's] skill as observed by this Court at trial and in the pleadings he has submitted"); *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 719 (3d Cir. 1989) (explaining that a court may "reduce requested fees with respect to matters within the judge's personal knowledge").

Once the plaintiff has established her prima facie case, the defendant may contest the reasonableness of the rate with "appropriate record evidence."  *Evans*, 273 F.3d at 361.  Hourly rates that were set for a specific attorney in previous court decisions do not generally constitute record evidence, *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 226 (3d Cir. 2001), unless those rates were set for the same attorney and for the same type of work over a contemporaneous period, *see Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986), *vacated on other grounds*, 483 U.S. 1015 (1987).  Once the defendant raises objections to the fee request, the district court has a "great deal of discretion" to adjust the fee award in light of those objections.  *Rode*, 892 F.2d at 1183; *see also Shea v. Galaxie Lumber & Construction Co.*, No. 99-1738, 2000 WL 868605, at *2 (7th Cir. June 28, 2000) ("It is well established that a district court has 'wide latitude' in determining the amount of attorneys' fees in an FLSA case.").

Here, Plaintiffs request an hourly rate of $400.00 for Attorney Pollick, $150.00 for a legal researcher, and $100.00 for a legal assistant.  Defendant objects to each of these rates as excessive.

14

i.      **Attorney Pollick**

Plaintiffs request an hourly rate of $400.00 for Attorney Pollick.  In support of their motion, they submit an affidavit by Attorney Pollick, wherein she outlines her experience since graduating from law school in 1999, noting that she is in her sixteenth (16th) year of the practice of law, and that has had her own law practice for fifteen (15) years, focusing primarily on civil rights matters.  (Doc. 163-5, at 3.)  In her affidavit, Attorney Pollick attests that $400.00 is her current hourly rate and notes that she received that rate in two (2) cases:  (1) *Harris v. City of Scranton*, 13-2282; and (2) *Vitro DePietro v. USDOJ*, USM-2013-00357.[5]  (Doc. 163-5, ¶¶ 4-5.)  This fails to satisfy her burden of establishing this as the market rate in the community.  *See Supinski v. United Parcel Serv., Inc.*, No. 3:06-cv-00793, 2012 WL 290548, at *2 (M.D. Pa. July 16, 2012) (finding that by simply pointing to a case in the district where her requested hourly rate was awarded, Attorney Pollick failed to satisfy her burden of establishing it as the prevailing market rate in the community).  First, upon review of the docket in *Harris*, the plaintiff's motion for attorney fees was withdrawn, and therefore there was no judicial order on the motion and the rate was never approved by the court.  (*See* Def. Ex. 11; *see also Wilson v. McVey*, 579 F. Supp. 2d 685, 688 n.5 (noting that a federal court may take judicial notice of court records and dockets).)  Attorney Pollick's own affidavit admits that her hourly rate in *Harris* was unopposed.  In such cases, the court has no discretion to reduce the requested rate, even if it is unreasonable.  *See Rode*, 892 F.2d at 1183 (explaining that an attorney fee award cannot be decreased based on factors not raised by the adverse party).

Second, Plaintiffs do not provide any documentation supporting Attorney Pollick's assertion that she received an hourly rate of $400.00 in *Vitro*.  *See Loughner*, 260 F.3d at

---

[5]      Plaintiffs argue that they are entitled to a $400.00 hourly billing rate for counsel because this is her usual billing rate.  Although counsel's usual billing rate is the starting point in ascertaining a reasonable hourly rate, it is not dispositive.  *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).

180 (explaining that satisfactory evidence of the prevailing market rate requires more than the attorney's own affidavits).  Nor do Plaintiffs provide any information about *Vitro* so that I can assess whether Attorney Pollick's legal services in *Vitro* were similar to her legal services provided here.  *Maldonado*, 256 F.3d at 184 (explaining that the court should compare the experience and skill of the attorney seeking fees to rates prevailing in the community for ***similar services***).  Attorney Pollick also attests that in 2014, before her hourly rate increased, she received payment for services from a client at an hourly rate of $375.00.  (Doc. 163-5, ¶ 26.)  However, again, there is no documentation supporting this assertion, nor is there any information about that case, nonetheless the name of that case, so that I may fairly compare her services in the two (2) cases.

Attorney Pollick also asserts that $400.00 reflects the market rate in Scranton/Wilkes-Barre for civil rights lawyers with extensive trial experience who take these cases on a contingency basis.  In support of this assertion, Plaintiffs submit a declaration by a local litigator, Attorney Jonathan S. Comitz, Esq., in which he attests that the market rate for experienced attorneys in Northeastern Pennsylvania capable of serving as lead or solo counsel in employment discrimination cases and willing to do so on a contingent fee basis is at least $400.00 per hour.  (Doc. 163-3, Ex. C, at 3.)  He further attests that he is familiar with Attorney Pollick and believes that her rate of $400.00 "is more than fair and reasonable for employment related litigation as she is certainly worthy of that rate based on her reputation, persistence, track record, esteem and work ethic as here in Northeastern Pennsylvania."  (*Id.*)

However, Attorney Comitz notes that the basis for his opinion is that the federal courts have adopted the community legal services ("CLS") rate standard with this type of litigation, and cites to several cases from the ***Eastern*** District of Pennsylvania for this proposition.  (*Id.* at 4.)  Attorney Comitz's reliance on rates in the Eastern District of Pennsylvania do not support his assertion that these rates are reasonable for Attorney Pollick's work here in the ***Middle*** District of Pennsylvania.  The law is clear that I should be guided by the prevailing rates in the forum of the litigation, which is the Middle District

16

of Pennsylvania, not the Eastern District.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (noting that the relevant rate is the prevailing rate in the forum of the litigation).  Additionally, Attorney Comitz's assertion that he finds Attorney Pollick's requested rates "reasonable" fails to support Plaintiffs' requested hourly rate because the standard is the ***prevailing market rate in the community***, not reasonableness.  *See J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, No. 3:07-CV-585, 2014 WL 1321116, at *6 (M.D. Pa. Mar. 31, 2014) (noting that an attorney declaration stating that the requested hourly rate was "reasonable" failed to support the requested hourly rate because the standard is the prevailing market rate in the community, not reasonableness).

In further support of Attorney Pollick's hourly rate, Plaintiffs also rely on a chart outlining attorney fees pursuant to the Community Legal Services ("CLS") of Philadelphia. (Doc. 163-4, Ex. D.)  Pursuant to that chart, a lawyer with sixteen (16) to twenty (20) years of experience, like Attorney Pollick, should receive an hourly rate of $435.00 to $515.00.  Plaintiffs also submit the "Laffey Matrix," which is used for determining fees of attorneys practicing in the District of Columbia.  (Doc. 185-6, Ex. I.)  This matrix lists an hourly rate of $435.00 for lawyers with eleven (11) to nineteen (19) years of experience. Again, Plaintiffs' reliance on the CLS of Philadelphia and the Laffey Matrix for attorneys in the District of Columbia is misguided because they do not speak to what the prevailing market rates are in the forum litigation, *i.e.*, the Middle District of Pennsylvania.

Plaintiffs also rely on various declarations submitted by attorneys in support of their petitions in ***other cases***.  For example, Plaintiffs submit declarations from Attorney Salvatore P.J. Vito and Attorney Barry H. Dyller, both of which were filed in 2013 in connection with their fee petition in *Rose v. Barret Township et al.*, No. 3:09-cv-01561. However, *Rose* was a section 1983 action asserting claims for false arrest, false imprisonment, and malicious prosecution.  *See generally Rose v. Barrett Twp. et al.*, No. 3:09-cv-1561, 2013 WL 246640 (M.D. Pa. Jan. 18, 2013).  Plaintiffs do not demonstrate how the services provided by Attorney Vito and Attorney Dyller in *Rose* would be

comparable to the services provided by Attorney Pollick in this FLSA action, since the two (2) cases do not involve similar claims, and therefore do not involve similar services. *See Maldonado*, 256 F.3d at 184 (requiring the court to assess counsel's requested rate to those prevailing in the community for **similar services**); *cf. Loughner*, 260 F.3d at 177 (finding no error in district court reduction of counsel's requested hourly rate in FLSA case, and noting that this reduction was in part due to the fact that the court was unpersuaded by affidavits submitted by employment discrimination practitioners because "an employment discrimination case is 'much more complex than a wage and overtime case'").[6]  Additionally, Attorney Pollick fails to demonstrate how her "skill, experience, and reputation" are comparable to that of Attorney Vito, who has over fifteen (15) years more experience practicing law than she does.  (*See* Doc. 185-2, Ex. E.)  Notwithstanding the fact that Attorney Vito has been practicing law for approximately twice as long as Attorney Pollick, Plaintiffs request an hourly rate that is $25.00 higher than that requested by Attorney Vito in *Rose*.  (*See* Doc. 185-2, Ex. E.)  Similarly, the Third Circuit Court of Appeals has affirmed my previous explanation that comparing Attorney Dyller's rates to Attorney Pollick's "actually tended to show that Pollick's rate was too high, because Dyller ha[s] at least fifteen years more experience than Pollick."  *See Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 238 (3d Cir. 2012).  Moreover, the motion for attorney fees in *Rose* was ultimately withdrawn, and therefore the requested rates were never ruled upon or approved by any court.

---

[6]     For this same reason, I do not find Plaintiffs' reliance on Attorney Richard L. Orloski's declaration filed in connection with a fee petition in *Todd v. Luzerne County Children et al.* (No. 3:04-cv-2637) or Plaintiffs' reliance on a *Legal Intelligencer* news article discussing contractual fees currently being paid to the attorneys representing Pennsylvania Attorney General Kathleen Kane and others in her office in civil suits particularly helpful.  (*See* Doc. 191 (Orloski Decl.); Doc. 185-5, Ex H. (*Todd* opinion); Doc. 190 (*The Legal Intelligencer* news article).)  For example, *Todd* involved claims for violations of substantive and procedural due process and equal protection under section 1983 and state law. Having adjudicated this action myself, I do not find that the legal services provided were comparable to the one at hand.

Finally, Plaintiffs rely on testimony at the fee hearing provided by Shelley L. Centini, Esq., and Carlo Sabatini, Esq.  Attorney Centini testified that her current hourly rate is $350.00 and Attorney Sabatini testified that his current hourly rate is $375.00. However, both testified that these rates have not yet been approved by a court in this region.  Attorney Sabatini testified that his last hourly rate that was approved by the Middle District of Pennsylvania was $350.00.  Upon review of Attorney Sabatini's testimony at the fee hearing and his declaration filed in support of a fee petition in *Lukawski v. Client Servs., Inc.*, No. 12-cv-02082, Doc. 23, Ex. 1 (Sept. 30, 2013), I do not find that Plaintiffs' reliance upon his hourly rate supports their requested fee.  Attorney Sabatini is board-certified in consumer bankruptcy law by the American Board of Certification, and is the only attorney with an office within fifty (50) miles of the William J. Nealon Federal Building and United States Courthouse who has obtained this certification.  *Lukawski v. Client Servs., Inc.*, No. 12-cv-02082, Doc. 23, Ex. 1, ¶¶ 4-5 (Sept. 30, 2013).  He has taught continuing legal education courses on the Fair Debt Collections Practices Act ("FDCPA"), appeared on WBRE television to discuss consumer issues, and has filed several hundred cases under the FDCPA.  *Lukawski* involved a claim under the FDCPA, a statute that has been acknowledged by the Supreme Court of the United States as "a comprehensive and complex federal statute."  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010).  Therefore, Attorney Sabatini's expertise in the area as well as the lack of other attorneys with similar expertise in the region justified his hourly rate.[7]

---

[7]     In *Lukawski*, Attorney Sabatini's requested hourly rate of $315.00 was reduced to $300.00.  *See Lukawski v. Client Servs.*, No. 3:12-CV-02082, 2013 WL 6154544, at *2-*3 (M.D. Pa. Nov. 22, 2013).  Plaintiffs do not provide any reasonable justification for requesting a rate that is $100.00 higher than this.  Plaintiffs only reference that there was no oral argument or trial in *Lukawski*.  (*See* Doc. 185, at 6.)  However, that is not relevant to my determination of a reasonable hourly rate because attorneys are inevitably awarded higher fees in cases where there is an oral argument or trial because they expend a greater number of hours in those cases, and therefore are compensated accordingly.

In contrast, Attorney Pollick requests an hourly rate that is even higher than Attorney Sabatini's hourly rate, yet has not demonstrated that she provided special expertise in this particular litigation or that there was a lack of other employment attorneys with similar expertise in the region that could justify a higher rate.  *See, e.g.*, *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1318-19 (M.D. Fla. 2001) (holding that the plaintiffs failed to establish that there was a lack of local attorneys available to take FLSA cases so as to justify their requested hourly rate).  Plaintiffs have also failed to demonstrate how Attorney Pollick's services in this FLSA action are similar to Attorney Sabatini's services in his FDCPA action.  *See Maldonado*, 256 F.3d at 184 (explaining that the prevailing party's attorney's rates should be compared to rates of attorneys in the community who provide ***similar services***).  Although Plaintiffs reference Attorney Pollick's prior experience litigating in the Middle District of Pennsylvania as well as the fact that she holds a Master's in Law in Trial Advocacy, they fail to demonstrate how this prior experience or her Master's in Law uniquely helped her in her representation in this matter.  Additionally, the Third Circuit Court of Appeals has noted that FLSA wage and overtime cases, such as this one, are relatively "simple" and "uncomplicated," and therefore do not warrant the type of expertise Attorney Sabatini demonstrated in *Lukawski*.  *See Loughner*, 260 F.3d at 176, 179 (characterizing the FLSA case it was reviewing as a "relatively simple 'wage and hour' case" that did not warrant the amount of attorney fees requested); *id.* at 179 n.5 ("[W]e believe that in general, a wage and overtime case is an uncomplicated cause of action.").

Accordingly, I find that Plaintiffs have failed to satisfy their burden of establishing a prima facie case that their requested hourly rate of $400.00 is consistent with the prevailing market rate.  I must therefore conduct my own analysis to determine what award is reasonable.  *See Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012) ("If the plaintiff fails to meet her prima facie case, the district court has the

discretion to determine what award is reasonable.").[8]

Defendant suggests an hourly rate of $250.00, a rate that I previously awarded Attorney Pollick in a case from 2013, which was subsequently affirmed by the Third Circuit Court of Appeals. *See Dee v. Borough of Dunmore*, No. 3:05-CV-1342, 2013 WL 685144, at *10 (M.D. Pa. Feb. 25, 2013), *aff'd*, 548 F. App'x 58, 62-63 (3d Cir. 2013). In support of this reduction, Defendant cites to previous cases in which Attorney Pollick was denied her requested hourly rate, which at the time was $300.00. *See Carey v. City of Wilkes-Barre*, No. 3:05-cv-2093, 2011 WL 1900169 (M.D. Pa. May 19, 2011) (holding that Attorney Pollick's length of practice and experience did not entitle her to an hourly rate of $300.00 and instead awarding an hourly rate of $225.00); *Lohman v. Duryea Borough*, No. 3:05-cv-1423, 2008 WL 2951070 (M.D. Pa. July 30, 2008) (holding that an hourly rate of $300.00 was not appropriate for Attorney Pollick and instead awarding an hourly rate of $215.00).[9] The hourly rate awarded to Attorney Pollick in previous cases will not determine what she should be paid here because past rates are not necessarily reflective of the "current" market rate. *See Black Grievance Comm.*, 802 F.2d at 652; *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 226 (3d Cir. 1997).

Based on all of the evidence before me and my knowledge of this case, I find Plaintiffs' requested hourly rate of $400.00 for Attorney Pollick unreasonable. I find that

---

[8] Even if I found that Plaintiffs established their prima facie case, I would still have the discretion to adjust the fee accordingly due to the numerous objections filed by Defendant. *See Rode*, 892 F.2d at 1183 ("Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections.").

[9] Plaintiffs also note that these cases highlighted by Defendant were decided in 2008, 2011, and 2013, and therefore do not reflect the "current" market rate. (Doc. 185, at 7.) Curiously, Plaintiffs also rely on cases that were also decided in 2011 and 2013 to support their requested hourly rate of $400.00. *See, e.g.*, *Lukawski v. Client Servs.*, No. 3:12-cv-02082, 2013 WL 6154544 (M.D. Pa. Nov. 22, 2013); *Rose v. Barrett Twp. et al.*, No. 3:09-cv-1561 (M.D. Pa. Aug. 7, 2013); *Todd v. Luzerne Cty. Children & Youth Servs.*, No. 3:04-cv-2637, 2011 WL 10723618 (M.D. Pa. Aug. 10, 2011).

Defendant's proposed hourly rate of $250.00 is reasonable, and will therefore award Plaintiffs an hourly rate of $250.00 for Attorney Pollick.

### ii.   Legal Researcher

Plaintiffs seek an hourly billing rate of $150.00 for their legal researcher. Defendant objects to this rate as unreasonable, and argues that Plaintiffs should not be able to recover fees for a legal researcher for whom the name and qualifications are not provided.  However, Plaintiffs are not required to provide the names and qualifications of their legal staff in order to recover fees for their work.  *See, e.g.*, *Jama Corp. v. Gupta*, No. 3:99-cv-1624, 2008 WL 108671, at *5 (M.D. Pa. Jan. 4, 2008) (awarding fees for an unnamed law clerk).  Therefore, this objection will be overruled.

As for reasonableness of the hourly rate for Plaintiffs' legal researcher, I will look to the prevailing hourly rate of legal researchers in this region.  In the last two (2) to four (4) years, I have approved hourly rates of $100.00 for legal researchers.  *See Dee*, 2013 WL 685144, at *11; *Supinski v. United Parcel Serv., Inc.*, 3:06-cv-00793, 2012 WL 2905458, at *3 (M.D. Pa. July 16, 2012).  Therefore, I find that Plaintiffs' requested hourly rate of $150.00 for their legal researcher is reasonable.

### iii.   Legal Assistant

Plaintiffs seek an hourly rate of $100.00 for their legal assistant.  Defendant again objects to this rate as unreasonable, and argues that Plaintiffs should not be able to recover fees for a legal assistant for whom the name and qualifications are not provided. However, as previously noted, Plaintiffs are not required to provide the names and qualifications of their legal staff in order to recover fees for their work.  *See, e.g.*, *Jama Corp.*, 2008 WL 108671, at *5 (awarding fees for an unnamed law clerk).  Therefore, this objection will again be overruled.

As for the reasonableness of the hourly rate for Plaintiffs' legal assistants, a survey of billing rates that have been recently approved for legal assistants in this region shows that hourly rates range from $75.00 to $150.00.  *See, e.g.*, *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-cv-0134, 2014 WL 2860863, at *13 (M.D. Pa. June 23,

2014) (approving hourly rates of $120.00 and $130.00 for legal assistants); *Dino v. Pennsylvania*, No. 1:08-cv-1493, 2013 WL 6504749, at * 3 (M.D. Pa. Dec. 11, 2013) (approving an hourly rate of $150.00 for a legal assistant in an FLSA case); *Dee*, 2013 WL 685144, at *11 (approving an hourly rate of $75.00 for a legal assistant); *Overly v. Global Credit & Collection Corp., Inc.*, 1:10-cv-2392, 2011 WL 2651807, at *5 (M.D. Pa. July 6, 2011) (noting that typical rates for legal assistants in the Middle District of Pennsylvania are between $70.00 and $120.00 an hour); *see also* Doc. 185-2, Ex. E (Attorney Vito declaration stating that his legal assistant bills an hourly rate of $100.00). Therefore, I find that Plaintiffs' requested hourly rate of $100.00 for their legal assistant is reasonable.

### b.      Number of Hours Reasonably Expended

In addition to determining a reasonable hourly rate, a court must also determine whether the number of hours spent on the litigation was reasonable. *Public Interest Research Grp. of N.J.*, 51 F.3d at 1188 (citations omitted). A court "should review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.*; *see also Hensley*, 461 U.S. at 434 (a trial court will "exclude from this initial fee calculation hours that were not reasonably expended on the litigation"). Once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request. *Interfaith Cmty. Org.*, 426 F.3d at 711.

Here, Defendant makes several objections to the number of hours for which Plaintiffs seek compensation. Therefore, I must conduct a detailed review of Plaintiffs' requested fees. Having carefully reviewed each of Defendant's objections and Plaintiffs' submitted time entries, Plaintiffs' requested award will be reduced as follows.

### i.      Claim Against the Association

Defendant argues that several hours billed by Plaintiffs' counsel were actually for Plaintiffs' claim against the Association, not the County. For example, Plaintiffs seek to recover the full time counsel spent on drafting pleadings that involved claims against both

23

the County and the Association.  (*See, e.g.*, Doc. 177, Tab A, at 6.)  I will overrule these objections because the pleadings highlighted by Defendant, such as the Complaint and the Amended Complaint, were pleadings filed early in the case that primarily dealt with claims against the County, not the Association.  Therefore, Defendant's request for a fifty percent (50%) reduction would be inappropriate.

However, Defendant's objection will be sustained as to pre-trial and trial time billed up until the Rule 50 motion in favor of the Association was granted.  Plaintiffs were not successful at trial in their claims against the Association.  Therefore, they may not recover for this time.  Plaintiffs argue that a fifty percent (50%) reduction for this time spent until the Rule 50 motion was granted would be inappropriate because a majority of the claims were against the County and not the Association.  Although Plaintiffs are correct that there were three (3) claims against the County and only one (1) claim against the Association in the Amended Complaint, the trial was only concerned with one (1) claim against the County–the FLSA violation.  Neither the breach of the collective bargaining agreement nor the PWPA claim was addressed at trial.  Therefore, the trial involved only one (1) claim against the County (the FLSA claim) and one (1) claim against the Association (the breach of duty of fair representation claim).  After conducting a careful, line-by-line review of Plaintiffs' submitted time entries, I find that Attorney Pollick's pre-trial and trial time up until the Rule 50 motion amounts to 66.9 hours and the legal assistant's pre-trial and trial time up until the Rule 50 motion amounts to 10 hours.  Because a fifty percent (50%) reduction of this time is appropriate, **48.35 hours of Attorney Pollick's time** and **10 hours of legal assistant time** will be deducted from the requested fee award.

Additionally, Plaintiffs seek to recover for time spent ***solely*** on their claim against the Association, such as time spent reviewing the Association's Answer.  "A defendant should not be required to compensate a plaintiff for attorney hours devoted to the case against other defendants . . . who are found not to be liable."  *Rode*, 892 F.2d at 1185 (citation and internal quotation marks omitted).  However, attorney hours "fairly devoted"

to one defendant that also support the claims against another defendant are compensable.  *Id.*  Thus, hours chargeable to the claims against defendants who are found not liable are chargeable to defendants against whom plaintiff prevailed if "plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim[s] against" the defendants over whom the plaintiff prevailed.  *Id.* (citation and internal quotation marks omitted).

Here, Plaintiffs have failed to show how these hours spent on claims against the Association were also fairly devoted to their claims against the County.  They only make a blanket assertion that their claim against the Association was "intertwined" with their claims against the County.  However, Plaintiffs' duty of fair representation claim against the Association was quite distinct from their claims against the County.  For example, Plaintiffs did not need to prove their claim against the Association (that it violated its duty of fair representation to Plaintiffs) in order to prove their claim against the County (that the County willfully violated the FLSA).  Therefore, Plaintiffs may not recover for this time spent solely on claims against the Association.  *See, e.g.*, *Rode*, 892 F.2d at 1185-86 (affirming district court conclusion that the hours devoted to the motion to dismiss were sufficiently separate among the defendants to warrant deduction).  Accordingly, **9.5 hours of Attorney Pollick's time** and **0.2 hours of legal assistant time** will be deducted from Plaintiffs' requested award.

Moreover, as suggested by Defendant, my review of Plaintiffs' counsel's billing reveals several time entries that appear multiple times but for the same work.  For example, Attorney Pollick billed 0.1 hours on October 14, 2015 for "*Receipt and review of Exhibit List - union*" on **both** the Souryavong/Velez bill **and** the Rolon bill.  Similarly, Attorney Pollick billed 0.8 hours on October 15, 2015 for "*Review and receipt of SH's pretrial memo*" on **both** the Souryavong/Velez bill **and** the Rolon bill.  Attorney Pollick also billed 0.3 hours on October 20, 2015 for "*Receipt and review of Union's BIO to MIL*" on **both** the Souryavong/Velez bill **and** the Rolon bill.  Attorneys may not bill and recover twice for the same work.  Doing so would violate at least two (2) of the American Bar

25

Association's Professional Rules of Conduct.  First, charging two (2) hours of work when you only work for one (1) hour is inherently unreasonable.  *See* ABA Rule of Prof. Conduct 1.5 (prohibiting lawyers from charging unreasonable fees).  Second, claiming to have worked two (2) hours when you really only have worked for one (1) hour is contrary to fact.  *See* ABA Rule of Prof. Conduct 8.4 (prohibiting dishonesty).  However, because I have already deducted these three (3) time entries on the basis that they constituted work for claims against the Association rather than the County, no further deduction is required.

### ii.      Overlap with *Rolon* Case

Defendant also objects to the number of hours Plaintiffs' counsel billed as unreasonably duplicative.  Specifically, Defendant notes that several hours billed for the Souryavong/Velez matter should not have also been billed to the Rolon matter because much of the work must have overlapped, given the nearly identical nature of the two (2) cases.  Defendant argues that Plaintiffs' attorney fees should be reduced by at least fifty percent (50%) due to the duplicative nature of the work done for the Souryavong/Velez matter and the Rolon matter.

In response, Plaintiffs argue that the filings in Rolon do not mirror the filings in Souryavong/Velez.  Plaintiffs also argue that because a private attorney could charge his client for time spent on both of these matters, Plaintiffs' counsel here may be compensated as well.  *See Davis v. City & Cty. of S.F.*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) ("[P]revailing civil rights counsel are entitled to compensation for the same tasks as a private attorney").

At the time that Plaintiffs Souryavong and Velez commenced this case, similarly situated Plaintiff Rolon brought a nearly identical action against the County and the Association in this Court.  The two (2) cases were consolidated, and accordingly, many of the attorney hours expended in the early stages of the two (2) cases were performed to the benefit of the plaintiffs in both cases.  In such cases, "it is appropriate for the Court to treat the fees in the manner in which the clients would be treated if the clients were

26

paying the fees directly." *Smith v. Borough of Dunmore*, No. 3:05-CV-1343, 2008 WL 4542246, at *4 (M.D. Pa. Oct. 9, 2008), *aff'd*, 633 F.3d 176 (3d Cir. 2011).  For example, in two (2) previous cases, also involving Attorney Pollick representing different plaintiffs bringing similar claims but in different suits, I reduced Attorney Pollick's submitted hours by fifty percent (50%), totaling a reduction of 64.1 hours, due to time spent for the shared benefit of the case and a "nearly identical" companion case she had brought against the same defendants.  *Id.*; *see also Lohman v. Duryea Borough*, No. 05-CV-1423, 2008 WL 2951070, at *3 (M.D. Pa. July 30, 2008) (reducing certain time entries by fifty percent (50%) due to the duplicative nature of the work done for the case at hand and a companion case).  Both of these awards were affirmed by the Third Circuit.

Likewise, here, the work done by Attorney Pollick for the Souryavong/Velez matter is similar to her work for the nearly identical Rolon matter.  Therefore, I will reduce Plaintiffs' submitted time for the Rolon matter by fifty percent (50%).  Plaintiffs' counsel has submitted 21.1 hours of time spent solely on the Rolon matter.  (*See* Doc. 163-1, Ex. A (listing 10.9 hours for 2013, 6.5 hours for 2014, and 3.7 hours for 2015).)  As noted above, 2.5 of these hours will be deducted because they were spent on Plaintiffs' claims against the Association, not the County, thereby lowering the total time billed by Attorney Pollick on the Rolon bill to 18.6 hours.  Accordingly, this will be reduced by fifty percent (50%) and Plaintiffs' requested fee award will be reduced by **9.3 hours of Attorney Pollick's time on the Rolon matter.**

Plaintiffs have also submitted 4.1 hours of legal assistant time for the Rolon matter.  (*See* Doc. 163-1, Ex. A, at 5-6 (listing 1.6 hours for 2013 and 2.5 hours for 2014, totaling 4.1 hours).)  Accordingly, this time will be reduced by fifty percent (50%) and Plaintiffs' requested fee award will be reduced by **2.05 hours of legal assistant time on the Rolon matter.**

### iii.    Cryptic and Vague Entries

Defendant argues that several entries on Attorney Pollick's time records are "cryptic and vague" and should therefore be deleted from her requested fee award.

27

Specifically, Defendant challenges (1) 8.3 hours of billing for telephone conferences with Souryavong and Velez "regarding case"; (2) 22.5 hours for "legal research" without specifying what the research was or if it was for Plaintiffs' claim against the County or the Association; (3) 3.9 hours for meetings with Souryavong and Velez regarding case without specifying whether Plaintiffs' claims against the County were even discussed; (4) 3.6 hours for correspondence with Souryavong and Velez, without specifying whether this correspondence was in any way related to Plaintiffs' claims against the County; (5) 1.7 hours of telephone conferences with Rolon without specifying whether these conferences related to Plaintiffs' claims against the County; (6) 1.0 hours for a June 11, 2013 meeting with Rolon without specifying whether this meeting related to his claims against the County; and (7) 1.8 hours of correspondence with Rolon without specifying if this correspondence related to Plaintiff's claim against the County.

In response, Plaintiffs submit Exhibit A, which is a document listing their responses to Defendant's objections, noting that the challenged time entries all constituted "time necessary to pursue case" and that "[a]ttorney-client privilege does not need to be divulged." (*See* Doc. 185-1, at 1.)  First, Plaintiffs' response that all time entries were "necessary to pursue case" fails to meaningfully respond to Defendant's objection that it cannot be fairly determined whether this time was spent pursuing Plaintiffs' case against the County or the Association, the latter for whom the County would not be responsible.

The Third Circuit Court of Appeals has stated that a fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Rode*, 892 F.2d at 1190 (citation and internal quotation marks omitted).  It is an established proposition of law that "'[w]here the documentation of hours is inadequate, the district court may reduce the reward accordingly.'" *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) (quoting *Hensley*, 461 U.S. at 433).  Although "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was

28

devoted nor the specific attainments of each attorney," a fee petition must be specific enough for the district court "to determine if the hours claimed are unreasonable for the work performed." *Id.*

Courts within this district have disregarded time entries based on lack of specificity. *See, e.g.*, *Jama Corp.*, 2008 WL 108671, at *7 (disregarding time entries that "include[d] broad statements such as 'Review litigation documents,' 'Review documents for Exhibit list,' 'Review pleadings,' 'Review trial exhibits,' and 'Review trial exhibits & documents.'"); *id.* (reducing total number of hours for one of the attorneys to eight (8) hours of various research assignments on trademark law); *Arlington Indus., Inc.*, 2014 WL 2860863, at *8-*9 (striking counsel's entries "for vague and unspecified tasks such as 'confer with counsel; review docs; review docket; memo re: same,'" and reducing counsel's billed time by 50.33 hours); *id.* at *9 (further reducing ten (10) hours of another attorney's submitted time for "work on" [Plaintiff's] brief, declaration, or motion" because they were 'vague and unspecified"); *id.* (disregarding ten (10) hours of another attorney's submitted time for "research" and "continue research" as "vague and overbroad").

Plaintiffs note that I have approved Attorney Pollick's billing entries in several fee petitions, such as *Dee v. Dunmore Borough*. However, they fail to mention that in *Dee*, I deducted time from Attorney Pollick's submitted entries based on lack of specificity. *See, e.g.*, *Dee. v. Borough of Dunmore*, No. 3:05-CV-1342, 2013 WL 685144, at *7 (M.D. Pa. Feb. 25, 2013) (deleting vague time entries and reducing Attorney Pollick's requested attorney's fee award), *aff'd*, 548 F. App'x 58 (3d Cir. 2013). Other courts outside of this district have also reduced requested attorney fee awards based on vague time entries. *See, e.g.*, *Wales*, 192 F. Supp. 2d at 1323 (sustaining "any objection to an entry referring to a conference, a telephone call, or the like . . . if the entry does not identify the subject of the communication," because "[w]hile it is not expected that discussions or other messages should be particularized in detail, it is easy enough to add a couple of words regarding the subject matter of the communication in order to show that it is compensable under the FLSA–if it is").

29

Here, Plaintiffs' bare-boned entries are too vague for a court to fairly determine if the hours claimed are reasonable for the work performed.  Plaintiffs could have added a general description of the work performed without going into great detail and divulging attorney-client privilege so that this Court could fairly determine whether the corresponding number of hours billed were reasonable.  For example, instead of submitting pages and pages of time entries stating "TC from Nelson regarding case," or "Legal research for case," Plaintiffs could have submitted entries such as "TC from Nelson regarding MTD," or "Legal research for FLSA claim."   Neither of these entries reveal attorney-client privilege, yet would be specific enough for me "to determine if the hours claimed are unreasonable for the work performed."  *Washington*, 89 F.3d at 1037.

Upon review of time records submitted in prior fee petitions from attorneys in this district, including one who Plaintiffs called to testify at the fee petition hearing, requiring this additional detail is not unreasonable and in fact consistent with other attorneys in the region.  For example, in support of a fee petition in *Lukawski v. Client Servs., Inc.*, Attorney Sabatini submitted time records that included entries such as "Research for authority to indicate that Plaintiff's subjective interpretation of the letter is irrelevant, so, her deposition should not be had."  (*See Lukawski v. Client Servs., Inc.*, No. 3:12-cv-02082, Doc. 23-1, Ex. A, at 4 (M.D. Pa. Sept. 30, 2013).)  These entries provide sufficient detail for a court to determine whether the corresponding number of hours submitted are reasonable without divulging attorney-client privilege.  Plaintiffs' bare-boned entries, such as "Legal research for case," fail to provide this Court with sufficient detail as to whether the number of hours spent on these tasks were reasonable.  (Doc. 163-1, Ex. A, at 1.)

Therefore, after conducting a detailed, line-by-line review of Plaintiffs' submitted entries, I will reduce Attorney Pollick's submitted time by **7.8 hours** based on vague and cryptic time entries for telephone conferences with Plaintiffs.[10]  For this same reason, I

---

[10]     I am not deducting the following time entries requested by Defendant: (1) 0.1 hours on June 21, 2013 for "TC from Mike regarding office visit"; (2) 0.1 hours on August 5, 2013 for "TC from Mike advising he'll come down later this week;

will also reduce Attorney Pollick's submitted time by **3.9 hours** based on vague and cryptic time entries for meetings with clients "regarding case" (*see, e.g.*, Doc. 163-1 (listing 2.0 hours for a "Meeting with Mike regarding case")); and **1.4 hours** based on vague and cryptic "correspondence" (*see, e.g.*, Doc. 163-1 (listing 0.1 hours on July 4, 2013 for "Correspondence with Edwin regarding case")).  Therefore, in light of Plaintiffs' vague and cryptic time entries, their requested fee award for time spent by Attorney Pollick will be reduced by a total of **13.2 hours**.[11]

---

(3) 0.1 hours on January 31, 2014 for "TC from Mike regarding missed call"; (4) 0.1 hours on March 31, 2014 for "TC from Mike regarding discovery; or (5) 0.1 hours for on August 10, 2015 for "TC from Mike regarding vm."  I find that these time entries are not so vague and cryptic so as to justify a deduction.

[11]   As several other courts have recognized, "an hour-by-hour analysis is 'impractical and a waste of judicial resources.'"  *See Wales*, 192 F. Supp. 2d at 1320 n.2 (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)).  The accuracy of this statement is confirmed by the "mind-numbing review of the myriad of one-quarter hour entries" that courts have had to engage in due to the inability of parties to reasonably resolve their attorney fee disputes.  *Wales*, 192 F. Supp. at 1320 n.2.  Some courts have even expressed skepticism over plaintiffs' attorneys who prolong litigation so that they may recover a greater fee award.  *See, e.g.*, *Haworth*, 56 F.3d at 1052 (observing that "the only one who benefited by pursuing the litigation after the Rule 68 offer was made was the plaintiffs' attorney"); *id.* ("Just because a plaintiff has an FLSA violation in her pocket does not give her license to go to trial, run up the attorney fees and then recover them from the defendant.").  Recognizing the impractical and inappropriate nature of this hour-by-hour analysis that courts have been forced to engage in, at least one court has even explicitly stated that they "did not double-check the figures regarding the time entries and therefore do not guarantee their precise mathematical accuracy," because even if one hundred errors were made, the difference in the award would be "inconsequential" due to the number of entries billed for less than an hour.  *Wales*, 192 F. Supp. at 1320 n.2.  Here, I have carefully double-checked my figures regarding the time entries.  However, "since a reviewing court also should not be required to engage in an hour-by-hour evaluation," I have not attached my spreadsheet of calculations because "[t]he presentation of such details would simply ***compound the waste of time***." *Id.* (emphasis added).

#### iv.    Review of Press Coverage

Defendant also argues that 0.2 hours of submitted time should be deducted from Plaintiffs' fee request because it relates to reviewing press coverage on the case, which is not compensable.  Specifically, Attorney Pollick submitted a time entry on June 8, 2013, for 0.20 hours for her "review of article on case."  (*See* Doc. 163-1, at 1.)  In the past, courts within this district have denied attorney compensation for time spent ***communicating*** with the press.  *See, e.g.*, *Dee. v. Borough of Dunmore*, No. 3:05-CV-1342, 2013 WL 685144, at *8 (M.D. Pa. Feb. 25, 2013), *aff'd*, 548 F. App'x 58 (3d Cir. 2013); *Carey v. City of Wilkes-Barre*, No. 05-CV-2093, 2011 WL 1900169, at *3 (M.D. Pa. May 19, 2011), *aff'd*, 496 F. App'x 234 (3d Cir. 2012); *Lohman v. Duryea Borough*, No. 05-CV-1423, 2008 WL 2951070, at *4 (M.D. Pa. July 30, 2008), *aff'd sub nom. Lohman v. Duryea Borough*, 574 F.3d 163 (3d Cir. 2009).

Plaintiffs rebut that reviewing news and media reports about a case ***is*** compensable, citing a Ninth Circuit case, which noted that "[w]here the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients.  Prevailing civil rights plaintiffs may do the same." *Davis v. City & Cty. of S.F.*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993).  Plaintiffs argue that their counsel needs to be appraised of the articles that portray the case to the community.  However, in the *Davis* opinion cited by Plaintiffs, the Ninth Circuit held that "[o]n remand, the district court should disallow any hours claimed by appellees' counsel for public relations work ***which did not contribute, directly or substantially, to the attainment of appellees' litigation goals.***" *Id.* at 1545; *see also Does I v. The Gap, Inc.*, No. 01-0031, 2003 WL 22997250, at *2-*3 (D. N. Mar. I. Sept. 11, 2003) (distinguishing *Davis* on its facts and denying plaintiffs' request for media and public relations costs in attorney fee petition).  Consistent with this reasoning, the Third Circuit Court of Appeals has affirmed the deduction of attorney time spent "speaking with the news media because that time was not compensable." *Dee*, 548 F.

App'x at 61 (affirming my deduction of 2.2 hours that Attorney Pollick spent speaking with the news media).  Other courts have similarly rejected plaintiffs' attempts to recover attorney fees for marketing and public relations activity.  *See, e.g.*, *Wales*, 192 F. Supp. 2d at 1323 (excluding time spent on marketing and public relations from attorney fee award in FLSA case because the plaintiffs "have provided no justification for fee-shifting of time spent on this type of activity"); *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 604-05 (D.N.J. 1998) ("Billing for time spent contacting the media is highly inappropriate."); *id.* at 605 ("It takes a lot of *chutzpah* to not only participate in such media contact during the litigation, but to bill for it.").

Therefore, consistent with how other courts have approached this issue, I hold that Plaintiffs may not recover fees for an attorney's time spent on media and press coverage unless they can show that it contributed, directly or substantially, to the attainment of Plaintiffs' litigation goals.  Here, it cannot be said that Attorney Pollick's time spent reviewing an article on the case, which I will note was the day immediately after the original Complaint was filed, contributed directly or substantially to the attainment of Plaintiffs' litigation goals.  It is this Court that decides this case, not the community. Although Plaintiffs could potentially argue that press coverage might be relevant to counsel during jury selection and trial, though even that is a stretch given my instruction to jurors ***not*** to read any press coverage on the case, Attorney Pollick's press review took place over two (2) years prior to the start of trial in this case, *i.e.*, during the pleading stage of this case where all decisions were made by this Court, not the community.  For this same reason, this time could not be properly billed to one's own client.  *See Maldonado*, 256 F.3d at 184 (explaining that hours that would not generally be billed to one's own client are not properly billed to an adversary).  Accordingly, the **0.2 hours** Attorney Pollick billed to "review of article on case" will be deducted from Plaintiffs' requested award.

### v.    Other Incompensable Tasks

Defendant has made several other objections to Plaintiffs' time entries as

incompensable, but they will be overruled.  (*See* Doc. 177, at 27-34.)  I find that these entries, such as time billed for setting up a telephone conference with the Court, internal discussions that counsel had with her legal staff regarding the case, filing documents with this Court, travel time, legal assistant time at trial, and legal assistant time preparing exhibit binders, are all reasonable time entries that could properly be charged to one's client, and are therefore recoverable.  *Davis*, 976 F.2d 1536 ("[P]revailing civil rights counsel are entitled to compensation for the same tasks as a private attorney").

Defendant also objects to time billed relating to Plaintiffs' arbitration proceedings because it was a separate and distinct legal proceeding in which Attorney Pollick did not participate.  However, I find that this time is compensable because counsel's time spent on the arbitration, even though she did not personally participate in it, was directly related to her work for Plaintiffs in this matter.  For example, Attorney Pollick performed legal research on the effect of the arbitration on the case and discussed the arbitration with her clients, all of which is compensable time because it was in preparation for this matter and could have been billed by a private attorney to her client.

Defendant also objects to 0.1 hours for duplicate billing wherein Plaintiffs' counsel billed 0.1 hours concerning a Recusal Order of this Court both on June 19, 2013, and June 26, 2013.  However, Plaintiffs rebut that this was not duplicate billing because on June 19, 2013, counsel spent 0.1 hours reviewing the Order recusing Judge Mannion and on June 26, 2013, counsel spent 0.1 hours reviewing the order noting that the case had been reassigned to this Court.  Accordingly, the objection will be overruled.

However, I will sustain Defendant's objection to the 0.2 hours Attorney Pollick billed on June 7, 2013 for the receipt of payment entries.  (*See* Doc. 163-1, at 1.)  This is not compensable time that an attorney could properly charge a client.  *Maldonado*, 256 F.3d at 184 (explaining that hours that would not generally be billed to one's own client are not properly billed to an adversary).  Accordingly, **0.2 hours of Attorney Pollick's time** will be deducted from Plaintiffs' requested fee award.

### vi.      Excessive Hours

Defendant further objects to Attorney Pollick's billed time entries as excessive in light of the work performed.  In particular, Defendant argues that Attorney Pollick's recorded time of 18.75 hours of legal research and preparation of a brief in opposition to the County's motion to dismiss is excessive because it resulted in only a ten (10) page brief.  I have carefully reviewed Plaintiffs' brief, and I agree that the 18.75 hours of legal research and preparation billed for this brief is excessive.  First, I find that calling Plaintiffs' brief a ten (10) page brief is a generous characterization, given that one of these ten (10) pages is almost entirely consumed by a block quote copied and pasted verbatim from another court opinion, a second page is only one (1) sentence long, and a third page contains no legal analysis as it is simply the certificate of service.  However, my finding that 18.75 hours is excessive for this brief is not based on the brief's length.[12] Rather, after reviewing the substance of the brief's contents, its legal analysis and the cases cited, and being intimately familiar with the parties' claims in this litigation, I do not find that 18.75 hours can be justified, particularly since there were no novel legal issues raised in this brief.  Additionally, given Attorney Pollick's sixteen (16) years of experience in civil rights and employment law and her prior experience teaching employment and labor law, she should have already been intimately familiar with the legal issues involved in the brief.  I find that ten (10) hours would be an appropriate amount of time to have spent on this brief.  *See, e.g.*, *Smith v. Borough of Dunmore*, No. 3:05-cv-1343, 2008 WL 4542246, at *6-*7 (M.D. Pa. Oct. 9, 2008) (finding Attorney Pollick's submitted time of twenty-seven (27) hours for a brief in opposition to a summary judgment motion was excessive and reducing the time to fourteen (14) hours; and finding Attorney Pollick's submitted time of nine (9) hours for preparation of a brief in opposition to a motion *in limine* was excessive and reducing the time to five (5) hours).  Accordingly, Plaintiffs'

---

[12]      As Mark Twain once famously said, "I didn't have time to write a short letter, so I wrote a long one instead."

counsel's submitted time for this entry will be reduced by **8.75 hours**.

Defendant also objects to 5.6 hours that Plaintiffs' counsel seeks for both the preparation of a Complaint and the Amended Complaint as excessive, arguing that it should be significantly reduced, "especially the 3.5 hours in preparation of the Complaint that was done prior to the filing of the Amended Complaint."  Defendant also argues that I should reject the 0.9 hours claimed by counsel for preparation of the Rolon Complaint because "little argument can be advanced" that it did not mirror exactly the previous complaint filed for Souryavong and Velez.  In reviewing the complaints, I do not find that this time is excessive.  Accordingly, these objections will be overruled.

### vii.    Preparation of Fee Petition

Plaintiffs also seek $2,800.00 for seven (7) hours spent preparing their motion for attorney's fees (Doc. 163, at 3) and $4,000.00 for an additional ten (10) hours associated with preparing their reply (Doc. 185, at 23).  Plaintiffs are entitled to recover attorney fees for the preparation of their fee petition.  *See Planned Parenthood of Cent. N.J. v. Attorney General of State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002) ("A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application.").  This is true even when Plaintiffs have rejected a Rule 68 Offer of Judgment that exceeded the amount ultimately awarded.  *See Haworth*, 56 F.3d at 1051-52 (holding that Rule 68 does not bar plaintiffs from recovering reasonable attorney fees for services rendered in FLSA action after the Rule 68 offer was made, even when the rejected offer exceeded the amount ultimately awarded).  Therefore, Plaintiffs will be awarded for the additional seventeen (17) hours that their counsel spent in preparing their fee petition.  However, because I reduced the hourly rate they requested for Attorney Pollick to $250.00, Plaintiffs will be awarded **$4,250.00 in fees** for Attorney Pollick's time spent on this fee petition (seventeen (17) hours multiplied by an hourly rate of $250.00), as opposed to the original $6,800.00 they requested (seventeen (17) hours multiplied by their requested hourly rate of $400.00).

### c.      Lodestar Calculation and *Johnson* Factors

Plaintiffs seek $147,040.00 in attorney fees based on 367.6 hours billed by Attorney Pollick; $9,810.00 based on 98.1 hours billed by their legal assistant; and $2,512.50 based on 16.75 hours billed by their legal researcher.[13]   However, as noted above, 89.4 hours will be deducted from Attorney Pollick's time and 12.25 hours will be deducted from the legal assistant's time.  Accordingly, Attorney Pollick spent 278.2 recoverable hours on this case and Plaintiffs' legal assistant spent 85.85 recoverable hours on this case.  No deductions were made to the legal researcher's submitted time. With Attorney Pollick's hourly rate reduced from $400.00 to $250.00, her lodestar is calculated to be **$69,550.00**.  Plaintiffs' legal assistant lodestar is calculated to be **$8,585.00**.  Plaintiffs' legal researcher's lodestar remains the same as requested: **$2,512.50**.  Additionally, as noted earlier, Plaintiffs will be awarded **$4,250.00** for the seventeen (17) hours Attorney Pollick spent preparing their fee petition.  This totals **$84,897.50**.

However, a court may adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained.  *Hensley*, 461 U.S. at 434-37; *Rode*, 892 F.2d at 1183.  In *Hensley*, the Supreme Court explained that a court's assessment of attorney fees does not end with the lodestar calculation:  there are several other factors to consider, referring to the twelve (12) factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

  (1)    the time and labor required;
  (2)    the novelty and difficulty of the questions;
  (3)    the skill requisite to perform the legal service properly;
  (4)    the preclusion of employment by the attorney due to acceptance of the case;
  (5)    the customary fee;
  (6)    whether the fee is fixed or contingent;
  (7)    time limitations imposed by the client or the circumstances;
  (8)    the amount involved and the results obtained;
  (9)    the experience, reputation, and ability of the attorney;

---

[13]      This does not include the seventeen (17) hours they sought for Attorney Pollick's time spent preparing this fee petition.

(10)   the "undesirability" of the case;
(11)   the nature and length of the professional relationship with the client; and
(12)   awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717-19.).[14]  Many of these factors are subsumed in the rate times hours calculation, but they may be considered as part of a court's consideration of overall fees.  *Id.* at 434.  The Court noted that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount."  *Hensley*, 461 U.S. at 436.  In explaining the possibility of an excessive fee recovery, the Court emphasized that the degree of success obtained is the most critical factor.  *Id.*

In adjudicating a matter of first impression, the Third Circuit Court of Appeals has held that settlement negotiations and Rule 68 Offers are a permissible factor for consideration in awarding attorney fees, and that courts may consider the amount in a rejected settlement offer to the amount ultimately awarded by the jury as an indication of the success in the litigation as a whole.  *See Lohman v. Duryea Borough*, 574 F.3d 163, 167-69 (3d Cir. 2009).  Consistent with this holding, courts nationwide have compared the amount offered in rejected settlement offers to the amount ultimately obtained at

---

[14]    Plaintiffs mistakenly assert that "the Supreme Court eliminated the evaluation of the *Johnson* factors from consideration on a fee petition." (Doc. 185, at 9 (citing *Perdue v. Kenny A.*, 559 U.S. 542 (2010)).)  Attorney Pollick has already presented this argument to the Third Circuit Court of Appeals on behalf of a different plaintiff, and the Third Circuit explicitly rejected it.  *See Dee*, 548 F. App'x at 64-65 ("[T]he District Court considered some of the factors from the Fifth Circuit's influential decision in *Johnson* . . . [Plaintiff] argues this was error because the Supreme Court 'eliminated the evaluation of the *Johnson* factors," . . . *We disagree*.").  Moreover, federal district and appellate courts nationwide have continued to consider the *Johnson* factors.  *See, e.g.*, *Gortat v. Capala Bros., Inc.*, 621 F. App'x 19, 22-23 (2d Cir. 2015) (reciting the *Johnson* factors in its review of a district court order on attorney fees); *Wales*, 192 F. Supp. 2d at 1328 (considering the *Johnson* factors in determining a reasonable reduction from the lodestar calculation in awarding attorney fees for an FLSA claim).

38

judgment to assess the success of the results obtained.  *See, e.g.*, *Mogilevsky*, 311 F. Supp. 2d at 220-21 (holding that the plaintiff was only entitled to ***fifty percent (50%)*** of the attorney fees incurred after his refusal of the defendant's Rule 68 offer of judgment in an FLSA action, and then ***further*** reducing the lodestar calculation by fifteen percent (15%) based on the limited results obtained, specifically noting the plaintiff's failure to prove the defendant's willful violation of the FLSA); *Wales*, 192 F. Supp. 2d at 1328-29 (holding that limited monetary recovery of $21,000 on FLSA claim warranted attorney fee award of only thirty-three percent (33%) of lodestar amount of $1,067,349.69, or $352,225.40).  Other courts have upheld larger percentage reductions in light of the limited results obtained.  *See, e.g.*, *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987) (affirming a sixty-seven percent (67%) reduction in the lodestar due to limited success in section 1983 action); *Schofield v. Trustees of the Univ. of Pa.*, 919 F. Supp. 821, 831-32 (E.D. Pa. 1996) (holding that fact that employee obtained damage award of $40,000 did not compel finding that she was entitled to fees and reduced lodestar amount by **two-thirds** in light of employee's limited success); *Orson, Inc. v. Miramax Film, Corp.*, 14 F. Supp. 2d 721 (E.D. Pa. 1998) (reducing the lodestar by **seventy-five percent (75%)** in light of the plaintiff's limited success, emphasizing that the jury only awarded her $159,780 in damages, whereas the plaintiff's expert testified that the plaintiff suffered damages of approximately $1,020,000.00).

Here, I find that the lodestar is not reasonable in light of the results obtained. Plaintiffs' counsel focuses on the fact that she received a jury verdict in her favor, but it appears to me that her success at trial was relatively limited.  Prior to trial, summary judgment had already been entered in favor of Plaintiffs on their FLSA claim against the County.  All that remained to be determined at trial was (1) an award of damages based on the FLSA claim, including whether the County acted willflully or if equitable tolling applied, either of which would extend the period of time for which Plaintiffs could recover overtime, and (2) whether the Association violated its duty of fair representation to Plaintiffs.  Plaintiffs failed to obtain an award more favorable than that offered to them by

the County prior to trial, failed to establish that the County acted willfully, failed to establish that equitable tolling applied, and failed to prevail on their duty of fair representation claim against the Association.  In other words, Plaintiffs were relatively unsuccessful at trial.  *See Smith v. Borough of Dunmore*, 633 F.3d 176, 184 (3d Cir. 2011) (affirming my reduction of the lodestar calculation for the plaintiffs because Attorney Pollick and her client only prevailed on one claim and obtained a less favorable result from trial than they would have obtained from settlement).

Furthermore, Attorney Pollick would have achieved greater pecuniary success for the Plaintiffs if the Defendant's Rule 68 Offer had been accepted.  In fact, Souryavong would have obtained an award almost twenty (20) times the size of the award he obtained by going to trial.  Velez would have obtained an award that was 1.36 times the size of the award he obtained by going to trial.  Rolon would have obtained an award that was almost three (3) times the size of the award he obtained by going to trial.  However, I am mindful that success in litigation, especially civil rights litigation, cannot be measured purely by the financial success obtained.  *Smith v. Borough of Dunmore*, No. 3:05-cv-1343, 2008 WL 4542246, at *13 (M.D. Pa. Oct. 9, 2008).  While the Plaintiffs could have accepted Defendant's Rule 68 Offers before trial, the offers may not have provided the valuable satisfaction that may have been derived Plaintiffs vindicating their rights against Defendant in court in front of a jury of their peers.  *Id.*  Because of the inherent difficulty in discerning or quantifying the gain Plaintiffs received from this, I view the Rule 68 Offers as important, but not entirely dispositive, in determining an appropriate fee award here.

Additionally, other *Johnson* factors besides the "results obtained" factor, also justify a reduced award.  The skill requisite to perform the services here was not particularly rigorous–Plaintiffs' counsel often brings labor and employment cases, and this FLSA wage-and-overtime claim was not a new or novel issue of law.  *See Smith v. Borough of Dunmore*, No. 3:05-cv-1343, 2008 WL 4542246, at *13-*14 (M.D. Pa. Oct. 9, 2008) (reducing lodestar calculation in First Amendment case because counsel often brings First Amendment retaliation claims, and the claims presented were "not particularly

40

difficult" and there was "not a new or novel issue of law"); *id.* (further noting that Attorney Pollick "did not demonstrate any special ability in the prosecution of the case" and that the case could not be considered "undesirable"–there was "no evidence" that the plaintiff "was unable to attract other attorneys to [the] case"); *see also Loughner*, 260 F.3d at 176, 179 (noting that FLSA wage and overtime cases are relatively "simple" and "uncomplicated," and therefore do not warrant a particularly high attorney fees award); *id.* at 179 n.5 ("[W]e believe that in general, a wage and overtime case is an uncomplicated cause of action.").

Based on the *Johnson* factors, including the critical "results obtained" factor, I find that a downward departure of the lodestar is warranted, and Plaintiffs will be awarded a total of **$50,000.00** in attorney fees.  *See Smith v. Borough of Dunmore*, No. 3:05-cv-1343, 2008 WL 4542246, at *13-*14 (M.D. Pa. Oct. 9, 2008) (reducing lodestar for Attorney Pollick's attorney fees from $72,261.00 to $20,000.00), *aff'd*, 633 F.3d 176, 184 (3d Cir. 2011).  In addition to the $4,250.00 that Plaintiffs will be awarded for Attorney Pollick's time spent preparing the fee petition, Plaintiffs will be awarded a total of **$54,250.00** in attorney fees.

### 2.    Costs

As the prevailing party in this FLSA litigation, Plaintiffs are entitled to an award of reasonable costs.  *See* Fed. R. Civ. P. 54(d)(1) (providing that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party"); *see also* Fair Labor Standards Act, 29 U.S.C. § 216(b) (providing that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.")  Here, Plaintiffs seek costs in the amount of $2,845.25.  However, as explained earlier, Plaintiffs may not recover costs incurred after November 28, 2014, the date on which Defendant's Rule 68 Offers were made because the amount in those offers exceeds the amount they ultimately obtained at judgment.  *See* Fed. R. Civ. P. 68(d) (providing that "[i]f the judgment that the offeree finally obtains

is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."); *Marek*, 473 U.S. at 7-9 (holding that the defendants were not liable for attorney fees incurred by plaintiff after the defendants' Rule 68 Offer was made because the plaintiff ultimately recovered judgment for less than the rejected Rule 68 Offer); *Haworth v*, 56 F.3d at 1052 (vacating district court's award of costs to the plaintiff in an FLSA case because the plaintiffs recovered less by judgment than the defendant's Rule 68 Offer, and therefore are not entitled to any costs incurred after the Rule 68 offer of judgment was made); *Dee*, 2013 WL 685144, at *6 (holding that because the defendants' Rule 68 Offer was more favorable than the judgment, the plaintiff was precluded from recovering costs incurred after the Offer was made), *aff'd*, 548 F. App'x 58 (3d Cir. 2013); *Shea,* 2000 WL 868605, at *1-*2 (affirming reduction of costs incurred after a Rule 68 offer was rejected in FLSA case); *Carroll v. Clifford Twp.*, No. 3:12-0553, 2015 WL 7016435, at *2 (M.D. Pa. Nov. 12, 2015) (holding that "the plaintiff is only entitled to the costs accumulated prior to the [Rule 68] Offer" because it exceeded the amount the plaintiff ultimately received after judgment).  I have conducted a careful, line-by-line review of Plaintiffs' unbilled costs in this litigation (Doc. 163-2, Ex. B), and found that the total costs incurred by Plaintiffs after November 28, 2014 amount to $1,242.40. Therefore, Plaintiffs' requested award for costs of $2,845.25 will be deducted by this amount.  Accordingly, Plaintiffs will be awarded **$1,602.85** in costs.

**E.    Plaintiffs' Motion Requesting Defense Counsel's Time Records and Attorney Billing (Doc. 179)**

Plaintiffs request defense counsel's time records and attorney billing invoices, arguing that because defense counsel has contested time spent on this matter, it is important for the Court to see defense counsel's time records and billing statements. Plaintiffs also argue that Defendant's records and bills will be relevant in helping the Court to "evaluate the time [Plaintiff] spent successfully pursuing their FLSA claim," which would be helpful in this Court's evaluation of what fee to award to Plaintiffs' counsel. (Doc. 183, at 3.)

Plaintiffs' request for defense counsel's time records and billing invoices will be denied. First, Defendant makes only three (3) objections to Plaintiffs' time entries as excessive: (1) 18.75 hours for legal research and preparation of a brief in opposition to the County's motion to dismiss; (2) 5.6 hours billed for the preparation of a Complaint and an Amended Complaint; and (3) Attorney Pollick's travel time. In the past, requests for opposing counsel's time and billing invoices have been denied where there were only a limited number of objections based on excessive time. *See, e.g.*, *Dee*, 2013 WL 685144, at *1 (denying Attorney Pollick's motion for defense counsel's time and billing because only two (2) of the objections to the motion for attorney's fees challenged time spent on particular tasks as excessive); *see also Supinski*, 2012 WL 2905458, at *3 (denying Attorney Pollick's motion for defense counsels' time records and billing invoices for this reason). Instead, Defendant's objections here predominantly focus on the reasonableness of Attorney Pollick's requested hourly rate and the specificity of her time entries, not excessiveness.

Second, the parties have already supplied me with more than sufficient evidence to determine a reasonable attorney fee without defense counsel's records. I see no need in permitting "an already cluttered record to be further confused by an inquiry so completely collateral to the central issue of reasonableness of the fee requests." *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984).[15] Considering all of the evidence that has already been provided to me, through extensive briefing, countless

---

[15]     Although the Third Circuit acknowledged in *Fine Paper* that opposing counsel's time records **can** in some instances enlighten the court as to reasonableness of hours and hourly rates, it also left discovery on this issue to the sound discretion of the district court. 751 F.2d at 587. In reviewing the district court decision in *Fine Paper*, the Third Circuit explained that "[c]onsidering all the evidence offered on hours and rates, and the likelihood that such discovery would generate inquiries into collateral matters, such as privilege, we cannot hold that the court abused its discretion in denying the motion [for defense counsel's time and billing records]." *Id.*; *see also Hensley*, 461 U.S. at 437 (stating that a request for attorney fees should not result in a "second major litigation").

declarations, numerous exhibits, applicable case law, and a fee hearing where the parties further expounded on their positions, offered additional exhibits, and subpoenaed witnesses to testify to the prevailing market rate, I have enough of a record to determine a reasonable attorney fee award in this matter without defense counsel's time records.

Third, I am not persuaded that defense counsel's time and billing records are necessarily helpful in assessing the reasonableness of Plaintiffs' counsel's time and billing records. *See Samuel v. Univ. of Pittsburgh*, 80 F.R.D. 293, 294 (W.D. Pa. 1978) ("[T]he number of hours required by opposing counsel to defend a claim has little relevance to the reasonableness of the number of hours which plaintiffs' counsel devoted to pursuing a cause of action on behalf of a plaintiff in a given case."). This is particularly true here where defense counsel represents a large governmental organization and Plaintiffs' counsel represents three (3) non-corporate individuals. *See id.* at 295 (explaining "that the number of hours which defense counsel expended in this case in representing several educational institutions, have no relevance to the question of the reasonable number of hours which were required of class counsel representing non-corporate plaintiffs."). Larger organizations, often armed with more resources to expend on litigation than individuals, are frequently more demanding on their counsel in requesting constant updates on the litigation and detailed summaries on recent rulings, thereby requiring more time by their attorneys. *Id.* at 295 (noting that it is common knowledge that "the hourly demands and paper work of a defense attorney far exceed the requirements of plaintiff's counsel" because a "defense attorney is representing a client which demands current knowledge of the status of litigation. The same does not obtain with regard to class counsel."); *id.* ("[I]t is fair to state that the hourly demands of defense counsel, when compared to an attorney representing an individual or class plaintiff, is approximately three to one.").

Furthermore, I also find that defense counsel's time records often bear little relevance to the reasonableness of plaintiff's counsel's time records because cases may often have a greater precedential value for one side over the other, or may involve more

complicated legal defenses for one side over the other. *See, e.g.*, *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1574 (11th Cir. 1985) (noting that the Eleventh Circuit has on multiple occasions questioned the relevance of defense counsel's time and billing records, explaining that their "reasoning has been that the number of hours needed by one side to prepare adequately may differ substantially from that of opposing counsel because the nature of the work on each side may differ dramatically" and because "the case may have far greater precedential value for one side than the other")[16]; *see also*

---

[16]     Plaintiffs rely on *Henson* in support of their motion for defense counsel's records. However, even in *Henson*, the Eleventh Circuit acknowledged that they have often questioned the relevance of defense counsel's time records in certain cases. 770 F.2d at 1574. In *Henson*, the Eleventh Circuit found that the plaintiff was entitled to defense counsel's records because the defendant had vigorously contended the plaintiff's claims at every stage of the litigation for over ten (10) years, and the district court repeatedly stated during the fee hearing and acknowledged in its ruling that it had trouble deciding on an appropriate fee because of the available evidence. *Id.* at 1574-75. The trial judge was particularly concerned because the plaintiff has used numerous lawyers and he felt that he could not be certain as to how many of those claimed hours were attributable to duplication. *Id.* at 1575. Here, there is no such concern. The parties have supplied me with a wealth of evidence to decide on a reasonable fee. Additionally, Plaintiffs have been represented by the same lawyer throughout the two (2) to three (3) years of this litigation, and therefore unlike in *Henson*, there is no concern of multiple lawyers billing for duplicative work. Plaintiffs also rely on three (3) district opinions in support of their motion-- (1) *Blowers v. Lawyers Cooperative Publishing Co.*, 526 F. Supp. 1324 (W.D.N.Y. 1981); (2) *Coalition to Save our Children v. Bd. of Educ. of the State of Delaware*, 143 F.R.D. 61 (D. Del. 1992); and (3) *Stastny v. Southern Bell Telephone & Telegraph Co.*, 77 F.R.D. 662 (W.D.N.C. 1978). In *Blowers*, the Western District of New York acknowledged that there is a split of authority on the issue of whether plaintiffs are entitled to defense counsel's time records and explicitly rejected the approach taken by a district court within the Third Circuit. *See Blowers*, 526 F. Supp. at 1325-28 (rejecting *Samuel v. Univ. of Pittsburgh*, 80 F.R.D. 293 (W.D. Pa. 1978)). Although the court in *Coalition* found that the specific facts in the case it was presented warranted discovery of defense counsel's records, it acknowledged that the Third Circuit Court of Appeals has left "questions of discovery on this issue to the informed discretion of the district court." *Coalition to Save Our Children*, 143 F.R.D. at 64 (citing *In re Fine Paper Antitrust Litig.*, 751 F.2d at 587). Similarly, the court in *Stastny* also acknowledged that decisions regarding

*Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 731 (7th Cir. 1978) (rejecting the petitioner's request for a fee award based on what the opposing side spent in time and money because "[t]his ignores the fact that a given case may have greater precedential value for one side than the other"). Additionally, "a plaintiff's attorney, by presenting questionable claims and refusing to settle except on outrageous terms, could force a defendant to incur substantial fees which he later uses as a basis for his own fee claim," thereby further demonstrating the lack of relevance defense counsel's records might have. *Mirabal*, 576 F.2d at 731. Finally, the amount of fees one side might be wiling to pay counsel in a matter involves various motivations, such as the precedential value of the case for that particular party, the on-going attorney-client relationship, and the amount of money the client has at his or her disposable to spend on the litigation. *Id.* at 731. Accordingly, because both parties have already provided me with sufficient evidence to determine a reasonable fee award and because I do not find that defense counsel's records would be particularly relevant, Plaintiffs' motion will be denied.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for liquidated damages (Doc. 147) shall be granted. However, Plaintiffs' motion to strike Defendant's Rule 68 Offers (Doc. 158); Plaintiffs' motion for pre-judgment interest (Doc. 160); and Plaintiffs' motion for defense counsel's time records, bills, and invoices (Doc. 179) shall be denied. Plaintiffs' motion for attorney fees and costs (Doc. 163) shall be granted in part and denied in part. Plaintiffs shall be awarded $54,250.00 in attorney's fees and $1,602.85 in costs, for a total of **$55,852.85**.

An appropriate order follows.


February 1, 2016                                  /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

---

attorney fee awards are left to the sound discretion of the court and are highly dependent on the facts of each particular case. *Stastny*, 77 F.R.D. at 663-64.